82 A.3d 386

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Kevin Edward MATTISON, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 12, 2012.

Decided Nov. 21, 2013.

178

Jeffrey Charles Marshall, Esq., Kearney & Marshall, P.C., York, Joanne Tyler–Floyd, Esq., Joanne Floyd, Esq., P.C., York, for Kevin Edward Mattison.

Duane Ramseur, Esq., York County District Attorney's Office, Amy Zapp, Harrisburg, PA Office of Attorney General, Timothy Jon Barker, Esq., York, for Commonwealth of Pennsylvania.

Before: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice BAER.

This is a direct appeal from an order of the York County Common Pleas Court, imposing a judgment of sentence of

death following Appellant Kevin Edward Mattison's conviction for first degree murder. Because we conclude that the issues presented in this appeal lack merit, we affirm Appellant's sentence of death.[1]

The record discloses that on the evening of December 9, 2008, Heather Johnson informed Tiffany Kenney that Kenney's boyfriend, Christian Agosto ("the victim"), was with another woman in his apartment. Outraged, Kenney decided to go to the victim's apartment and catch him in the act. Johnson asked Appellant, whom Kenney did not know, to drive his sports utility vehicle ("SUV") to pick up Kenney, and drive her to the victim's apartment. Appellant's wife, Julmeala Jung, and their young child were in the SUV with Appellant and Johnson when they picked up Kenney. Upon approaching the victim's residence, Kenney directed Appellant to park the SUV down the block from the apartment building to avoid being seen. Kenney and Johnson exited the vehicle, entered the apartment building, and banged on the victim's apartment door, receiving no response. Kenney then attempted to gain entry to the victim's apartment by calling him from Johnson's cell phone several times and requesting that he leave the apartment, not disclosing that she was lying in wait for him to open his door.

The victim did not succumb to Kenney's demands, and Kenney and Johnson reluctantly returned to the SUV. Once there, Appellant indicated that he could gain entry into the victim's apartment. Appellant and Kenney proceeded to the apartment door and Appellant inserted a screwdriver into the lock, opening it. Kenney entered the apartment and confronted the victim who, unbeknownst to Kenney, was in the bedroom with Kenney's childhood friend, Pavi–Elle Generette. Kenney began cursing at the victim and smacking him, moving the physical confrontation from the bedroom to the living room, with Generette remaining in the bedroom.

Amongst the chaos and apparently aware that the victim was a drug dealer, Appellant found it an opportune time to rob

1. This Court automatically reviews direct appeals from sentences of death pursuant to 42 Pa.C.S. § 9711(h)(1).

the victim of drugs. He entered the apartment with his gun drawn, pointed the gun at Kenney and the victim, and demanded that they get on the floor. Astonished at this turn of events, the victim and Kenney obeyed Appellant's directive and dropped to the floor. When Generette emerged from the bedroom and tried to leave, Appellant pointed the gun at her, seized her cell phone and purse, and told her to get on the floor with the others. Presumably to protect her, Appellant thereafter told Kenney to leave the apartment. Kenney complied and returned to the SUV. Appellant then repeatedly asked the victim, "Where's it at?" Although the victim initially denied having drugs, Appellant forced him to crawl on his stomach around the apartment to find them. Ultimately, the victim pointed to a cabinet above the stove in the kitchen where Appellant retrieved a large Ziploc bag of marijuana. After obtaining the drugs, Appellant walked toward the door to exit the apartment. Without provocation, Appellant then turned around and fired a single fatal shot into the victim's head as he was lying defenseless on the floor. The bullet fragmented, with three pieces lodging into the victim's scalp and one piece travelling through the victim's skull into his brain. Generette witnessed the shooting.

Kenney and Johnson were outside the apartment when they heard the gunshot. Appellant thereafter fled the apartment, returned to the SUV, and told Kenney, Johnson, and his wife that the woman inside the apartment had fired a weapon at him. Seven days after the shooting, the victim died from his injuries. Police discovered Appellant one month later hiding in the attic of a Maryland home. Generette identified Appellant as the shooter in a photo array days after the incident, and again in a live physical lineup at the York County prison. Appellant was thereafter charged with first degree murder and related offenses.

Prior to the instant shooting, Appellant was convicted of an unrelated murder in Maryland. Based on that prior conviction, the Commonwealth gave Appellant notice that one of the aggravating circumstances it would pursue in the penalty phase would be that Appellant was convicted of another

murder before or at the time of the offense. 42 Pa.C.S. § 9711(d)(11). Thereafter, Appellant filed a pretrial motion for bifurcation of the jury, in which he sought to have separate juries impaneled for the guilt and penalty phases of trial. In support thereof, Appellant asserted that it was imperative for him to question potential penalty phase jurors regarding whether they could fairly determine his sentence after considering the highly prejudicial evidence of his prior Maryland murder. Appellant maintained that he could not *voir dire* jurors on this issue prior to trial as disclosure of his previous murder conviction would prejudice their determination of guilt. Thus, he concluded, separate juries were required for the two phases of trial. The trial court denied Appellant's motion for bifurcation, and directed that the same jury determine both guilt and penalty.

At trial, the Commonwealth presented the testimony of Generette, who described in detail how Appellant fatally shot the victim. Kenney testified regarding the events that occurred leading up to and following the murder. Finally, Appellant's wife, Jung corroborated Kenney's testimony that Appellant took Kenney to the victim's apartment, and testified that she stayed in the SUV with her young son during the whole incident. Jung further stated that when Appellant returned to the SUV from the victim's apartment, he was carrying a Timberland shoe box that he did not previously possess. After Jung testified to what occurred in the presence of Kenney and Johnson, and was asked about what she observed when she was alone with Appellant, defense counsel objected based on the doctrine of spousal immunity. The trial court overruled the objection, and permitted Jung to testify that Appellant was not carrying the Timberland shoe box when he and Jung returned to their home after the murder. Jung further explained that Appellant left their home later that evening wearing a hooded sweatshirt, and returned wearing a different sweatshirt. Appellant did not testify in his own defense, but rather challenged the credibility of the Commonwealth's witnesses, and suggested that the murder was a crime of passion likely committed by Kenney or Generette.

Following trial, the jury convicted Appellant of first degree murder, two counts of robbery, and one count of burglary. During the penalty phase of trial, Appellant presented mitigation evidence establishing that he: was designated as a special education student; had no relationship with his father and, therefore, lacked a father figure in his life; was incarcerated at a young age; had a commitment to his religion; was the father of two children; and had a good relationship with his mother and sister. The trial court declined to list each of the aforementioned mitigating factors on the verdict slip, and instead listed only the statutory catchall mitigating circumstance of "any other evidence of mitigation concerning the character and record of the appellant and the circumstances of his offense." 42 Pa.C.S. § 9711(e)(8) ("catchall mitigating circumstance"). The jury returned a verdict of death, determining that the aggravating circumstances of commission of the killing during the perpetration of a felony, *id.* § 9711(d)(6), and having been convicted of a prior murder, *id.* § 9711(d)(11), outweighed the catchall mitigating circumstance, which the jury specifically listed as Appellant's "relationship with family."

The trial court additionally imposed three consecutive prison terms of 10–20 years for each of Appellant's two robbery convictions and for his burglary conviction. While the court imposed the statutory maximum sentence on all three offenses, the sentences for one robbery conviction and the burglary conviction were outside the Pennsylvania Sentencing Guidelines. To explain its deviation from the Guidelines on the robbery conviction, the trial court cited Appellant's fatal shooting of the victim during the course of the robbery. Similarly, the trial court explained its deviation from the Guidelines on the burglary conviction by noting that Appellant murdered the victim who was the occupant of the apartment that he burglarized. Accordingly, Appellant's aggregate sentence was death, plus a consecutive sentence of 30–60 years of incarceration. The trial court subsequently issued an order directing Appellant to file a Statement of Matters Complained on Appeal, and he filed such statement in a timely manner.

## I. Sufficiency of the Evidence for First Degree Murder

 As in all death penalty direct appeals, regardless of whether the appellant raises a specific challenge, this Court examines whether the evidence is sufficient to support the conviction of first degree murder. *Commonwealth v. Baumhammers*, 599 Pa. 1, 960 A.2d 59, 68 (2008); *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937, 942 n. 3 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). In reviewing the sufficiency of the evidence, we examine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, support the jury's finding of all the elements of the offense beyond a reasonable doubt. *Commonwealth v. Noel Matos Montalvo*, 598 Pa. 263, 956 A.2d 926, 932 (2008). The Commonwealth may sustain its burden by means of wholly circumstantial evidence. *Id.*

 "To obtain a first-degree murder conviction, the Commonwealth must demonstrate that a human being was unlawfully killed, the defendant perpetrated the killing, and the defendant acted with malice and a specific intent to kill." *Commonwealth v. Milton Montalvo*, 604 Pa. 386, 986 A.2d 84, 92 (2009) (citing *Commonwealth v. Kennedy*, 598 Pa. 621, 959 A.2d 916, 920 (2008)); 18 Pa.C.S. § 2502(a).[2] Specific intent to kill can be established through circumstantial evidence, such as the use of a deadly weapon on a vital part of the victim's body. *Commonwealth v. Rega*, 593 Pa. 659, 933 A.2d 997, 1009 (2007).

We conclude, without hesitation, that when viewed in the light most favorable to the Commonwealth as verdict winner, the evidence is sufficient to support Appellant's conviction of first degree murder. Generette's eye witness testimony demonstrates that after Appellant demanded and then obtained

2. Section 2502 of the Crimes Code, 18 Pa.C.S. § 2502, defines murder of the first degree as an "intentional killing," *id.* at § 2502(a), which, in turn, is defined as a "[k]illing by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing." *Id.* at § 2502(d).

the victim's drugs from his apartment, he fatally shot the victim in the head at close range while the victim was lying defenseless on the ground. Based on this evidence, the jury could have found beyond a reasonable doubt that Appellant shot the victim in a vital part of the body with the specific intent to kill.

Acknowledging that the victim was murdered by a single gunshot wound to his head, Appellant contends that the evidence is insufficient to demonstrate that he was the person who inflicted the fatal injury. He contends that the physical evidence suggests that the murder was a crime of passion that occurred during a heated fight between lovers, and that such crime was concealed by longtime friends Kenney and Generette. Appellant maintains that Kenney had the strongest motive to commit murder, and asserts that her behavior after the shooting, *i.e.*, failing to call the police immediately and instead going to the home of a friend, is indicative of her guilt.

Appellant's contention is not persuasive as it ignores the aforementioned law governing challenges to the sufficiency of the evidence by failing to view the evidence in the light most favorable to the Commonwealth as verdict winner. While it was proper for Appellant to present his theory of the case to the jury during the trial, such theory has no place in making the legal determination of whether the evidence of record is sufficient to sustain his murder conviction. As Generette's testimony established all the elements of first degree murder beyond a reasonable doubt, Appellant's challenge to the sufficiency of the evidence fails.

## II. Sufficiency of the Evidence for Burglary and Robbery

Appellant next argues that the evidence was insufficient to support his convictions of burglary and robbery because there was no physical evidence establishing that he entered the victim's apartment, and there were substantial amounts of money and drugs left out in the apartment after the purported theft occurred. The Commonwealth responds that Appellant's challenges to the sufficiency of the evidence

supporting his convictions of burglary and robbery are waived because he failed to include them in his Pa.R.A.P. 1925(b) Statement of Matters Complained of on Appeal.[3] It maintains that the only challenge to the sufficiency of the evidence set forth in Appellant's 1925(b) statement involved his first degree murder conviction.

The record supports the Commonwealth's contention in this regard. Because Appellant did not include in his 1925(b) statement challenges to the sufficiency of the evidence supporting his convictions of robbery and burglary, these claims are waived on appeal. *See Commonwealth v. Castillo,* 585 Pa. 395, 888 A.2d 775, 780 (2005) (citing *Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306, 309 (1998)) (holding that "in order to preserve their claims for appellate review, appellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to Pa. R.A.P. 1925(b). Any issues not raised in a Pa.R.A.P. 1925(b) statement will be deemed waived"); *see also Commonwealth v. Wholaver,* 588 Pa. 218, 903 A.2d 1178, 1183–84 (2006) (deeming waived issues in a capital appeal where the defendant did not file a timely statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b)).

### III. Spousal Confidential Communications Privilege

▮▮▮▮ Appellant next contends that the trial court erred in permitting his wife, Jung, to testify regarding privileged marital communications protected under 42 Pa.C.S. § 5914, which rendered his trial unfair. Section 5914, entitled, "Confidential communications between spouses," provides:

Except as otherwise provided in this subchapter, in a criminal proceeding neither husband nor wife shall be competent or permitted to testify to confidential communications made

3. Pennsylvania Rule of Appellate Procedure 1925(b) provides that "[i]f the judge entering the order giving rise to the notice of appeal ("judge") desires clarification of the errors complained of on appeal, the judge may enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal ("Statement")." The rule further provides that "[i]ssues not included in the Statement and/or in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii).

by one to the other, unless this privilege is waived upon the trial.

42 Pa.C.S. § 5914.[4] The spousal confidential communications privilege has its roots in common law and "is based upon considerations of public policy, as in the case of husband and wife to preserve the peace, harmony and confidence" in their relations. *Seitz v. Seitz*, 170 Pa. 71, 32 A. 578, 578 (1895). The Section 5914 privilege encompasses "any communications which were confidential when made and which were made during the marital relationship." *Commonwealth v. May*, 540 Pa. 237, 656 A.2d 1335, 1341–42 (1995), *cert. denied*, 525 U.S. 1078, 119 S.Ct. 818, 142 L.Ed.2d 676 (1999). The determination of what constitutes a confidential communication depends upon whether the defendant has a reasonable expectation that the communication will remain confidential. *Id.* at 1342. As a general matter, the presence of third parties at the time the communication is made negates the confidential nature of the communication. *Id.*

The specific evidence to which Appellant objects does not concern a direct "communication," but rather involves his wife's observation of him when they were alone, *i.e.*, what Appellant describes as his wife's observation of him carrying a Timberland shoe box into their home when they returned on the night of the murder.[5] Appellant also objects to the

4. Section 5914, which protects confidential communications between spouses, is distinct from Section 5913, entitled, "Spouses as witnesses against each other." The latter provision, which is not at issue here because Appellant was on trial for murder, is more broad and affords the testifying spouse a waivable privilege to refuse to give adverse testimony against his or her spouse in a criminal trial, except, *inter alia*, in actions for desertion and maintenance, cases where one spouse is charged with threatening, attempting or committing an act of bodily injury or violence on the spouse or children in their care, cases of bigamy, or cases where one of the charges is murder, involuntary deviate sexual intercourse, or rape. *See Commonwealth v. Spetzer*, 572 Pa. 17, 813 A.2d 707, 716–717 (2002) (comparing the protections offered by Section 5913 and 5914). "Even if a husband or wife may be called to give testimony adverse to his or her spouse, however, he or she is not competent [under Section 5914] to testify to confidential communications." *Id.* at 717.

5. Presumably, the shoe box contained the items Appellant had stolen from the victim and Generette, *i.e.*, the drugs, purse, and cell phone,

admission of his wife's testimony that, shortly after they came home on that evening, Appellant left their residence, and returned wearing a different hooded sweatshirt. He argues that observations of a spouse's conduct that occur in private should be afforded the same protection as oral or written confidential communications made to a spouse. In support of such proposition, Appellant cites *Commonwealth v. Clark*, 347 Pa.Super. 128, 500 A.2d 440 (1985), where the Superior Court held, without analysis, that Section 5914 protects as confidential communications both oral communications that a husband made to his wife in connection with disposing of an alleged murder weapon, and the wife's observations in that regard.

In response, the Commonwealth asserts there is no factual or legal support for Appellant's invocation of the spousal confidential communication privilege pursuant to Section 5914. It maintains that, contrary to Appellant's contentions, his wife did not testify that he carried a Timberland shoe box into their home after the murder. Rather, the Commonwealth asserts, Appellant's wife testified that she did not see Appellant carry the shoe box into the family residence. Notes of Testimony ("N.T."), Dec. 14, 2010, at 552.[6] Thus, the Commonwealth maintains, the challenged evidence constitutes neither a communication nor an observation. The Commonwealth further argues that Jung's testimony that Appellant left their residence after the murder and returned later wearing a different hooded sweatshirt is inconsequential, and not the type of communication protected by Section 5914.

We agree. Initially, we note that the record supports the Commonwealth's and refutes Appellant's characterization of

although the record does not reflect whether such items were ever recovered by police.

6. While Appellant's wife testified that she observed Appellant carrying a Timberland shoe box with him when he returned to the SUV after leaving the victim's apartment building, *id.*, at 543–44, such observation was made in the presence of third parties, Johnson and Kenney. Thus, even if one's conduct were construed as a confidential communication, the Commonwealth submits that such observation would not be protected by Section 5914 as it was not confidential. Appellant essentially concedes this point and challenges only testimony relating to his wife's observations of him when they were alone.

his wife's testimony. Regarding Jung's testimony as to observations of her husband's conduct, *i.e.*, the only testimony to which Appellant objects, Jung testified that she did not see Appellant carry a Timberland shoe box into the family home, and that Appellant left the home after the murder and returned wearing a different hooded sweatshirt. N.T., Dec. 14, 2010, at 552, 553. These observations, which are not patently incriminating, are not protected by Section 5914.

In *Commonwealth v. Chiappini*, 566 Pa. 507, 782 A.2d 490 (2001), *rev'd on other grounds by Commonwealth v. Kyle*, 582 Pa. 624, 874 A.2d 12 (2005),[7] this Court rejected an argument identical to that posed by Appellant herein—that a spouse's private observations of the other spouse's conduct should be afforded the same protection as oral or written spousal confidential communications. In *Chiappini*, the defendant was charged with arson and related offenses in connection with a fire that occurred in his home. The issue was whether the trial court violated the spousal confidential communication privilege by permitting the defendant's wife to testify regarding her observations of the defendant's conduct on the night of the fire, particularly the defendant's actions in leaving his car at a certain location and returning some time later. The defendant posited that acts may be considered confidential communications, and, thus, subject to the prohibition against disclosure, where they are undertaken in reliance upon the confidential nature of the marital relationship.

This Court expressly rejected this contention, holding that "although communication need not involve words, it must involve more than observation by one person of the conduct of another; it must involve the attribution of a message or meaning to that conduct." 782 A.2d at 496. We explained that "[w]hether particular sounds, gestures, or actions constitute 'communications' depends in large measure on the context in which they occur." *Id.* Thus, the trial court must evaluate

7. While our decision in *Chiappini* is captioned as an Opinion Announcing the Judgment of the Court, a clear majority agreed that the spousal confidential communication privilege does not extend to mere observations by one spouse of the other spouse's conduct, absent an attribution of a message or meaning to that conduct.

the offer of proof to determine whether the spouse's testimony would merely describe conduct of the other spouse that occurred in his or her presence or would disclose the conveyance of a message. We concluded that the spouse's actions in leaving his car in a particular location and returning some time later did not convey any message, and, therefore, was not entitled to protection under the spousal confidential communication privilege.

The same is true in the instant case. Appellant did not convey any confidential message to his wife when he entered his home without the Timberland shoe box, nor did he do so when he left the marital residence and returned home wearing a different hooded sweatshirt. Thus, contrary to Appellant's contentions, the admission of this testimony against Appellant did not violate Section 5914's prohibition against disclosure of confidential spousal communications. Moreover, the authority relied upon by Appellant in support of his contention, the Superior Court's decision in *Clark, supra,* has been expressly disavowed. *See Commonwealth v. McBurrows,* 779 A.2d 509, 518–19 (Pa.Super.2001) (overruling the Superior Court's prior holding in *Clark* and holding that Pennsylvania law does not extend the husband-wife privilege set forth in Section 5914 to one spouse's observance of the act of another spouse; the defendant's act of disposing of the alleged murder weapon did not constitute oral or written words, expressions or gestures intended to convey any message induced by the confidential nature of the marital relationship). Accordingly, Appellant is not entitled to relief on this claim.

### IV. Preclusion of Questioning on Prior Murder Conviction

### V. Motion for Bifurcation of Guilt and Penalty Phases

 Appellant's next two claims will be discussed simultaneously as they both involve his 1995 murder conviction in Maryland.[8] The Commonwealth gave Appellant pretrial no-

8. The parties stipulated that on July 27, 1995, Appellant pled guilty in Maryland to the crime of second degree murder, arising from his June 25, 1994 killing of Antoine S. Jones. N.T., Dec. 17, 2010, at 963. The

tice that during the penalty phase of trial, it would rely on his prior murder conviction as evidence of the aggravating circumstance that "[t]he defendant has been convicted of another murder committed in any jurisdiction and committed either before or at the time of the offense at issue." 42 Pa.C.S. § 9711(d)(11). Appellant argues that the trial court erred during pretrial *voir dire* by precluding him from asking potential jurors whether they would be influenced adversely or would otherwise be unable to follow the court's instructions after learning that he was already a convicted murderer.[9]

Recognizing the highly prejudicial impact of presenting such evidence to a jury prior to its determination of his guilt, Appellant contends that the only way to ensure his constitutional right to an impartial penalty jury was to impanel separate juries for the guilt and penalty phases of trial. According to Appellant, this would allow him to "life qualify" the penalty phase jurors to determine whether they could consider a life sentence after learning of his prior murder conviction, without prejudicing guilt phase jurors. Appellant maintains that, absent a proper life qualification process of the penalty phase jurors, he was denied his constitutional right to an impartial jury. *See Ross v. Oklahoma*, 487 U.S. 81, 85, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988) (holding that "[i]t is well-settled that the Sixth and Fourteenth Amendments [of the United States Constitution] guarantee a defendant on trial for his life the right to an impartial jury."); *Commonwealth v. Hunsberger*, 619 Pa. 53, 58 A.3d 32, 37 (2012) (holding that a criminal defendant's right to an impartial jury is guaranteed by Article 1, Section 9 of the Pennsylvania Constitution).

stipulation further provided that the crime of second degree murder under Maryland law is the equivalent of the crime of third degree murder under Pennsylvania law. *Id.*

9. The record indicates that prior to the commencement of *voir dire,* the trial court stated to counsel:

Hey, my law clerk wanted to make sure I reminded you that during *voir dire,* do not mention the Defendant's prior Homicide conviction or any specific aggravating circumstances. You can only question the Jurors, Prospective Jurors, generally regarding the aggravating circumstances.

N.T., Dec. 6, 2010, at 30.

 It is well established that the scope of *voir dire* rests in the sound discretion of the trial court, whose decision will not be reversed on appeal absent palpable error. *Commonwealth v. Karenbauer*, 552 Pa. 420, 715 A.2d 1086, 1094 (1998). Similarly, the trial court possesses discretion to determine whether counsel may propose their own questions of potential jurors during *voir dire*. *Commonwealth v. Paolello*, 542 Pa. 47, 665 A.2d 439, 451 (1995).

Appellant has failed to demonstrate that the trial court abused its discretion or unduly limited *voir dire* by precluding questioning that would have disclosed his previous murder conviction prior to the jury's determination of his guilt. Rather than ensuring an impartial jury, permitting pretrial questioning of the potential jurors regarding Appellant's 1995 murder conviction could have biased the jury against him, and laid the foundation for an arguably meritorious claim of ineffective assistance of counsel on collateral review. Under these circumstances, the trial court did not abuse its discretion by precluding questioning regarding Appellant's prior murder conviction during *voir dire*.

 We further hold that the trial court did not err by denying Appellant's motion to impanel separate juries for the guilt and penalty phases of trial. The Sentencing Code provides that "[a]fter a verdict of murder of the first degree is recorded and before the jury is discharged, the court shall conduct a separate sentencing hearing in which the jury shall determine whether the defendant shall be sentenced to death or life imprisonment." 42 Pa.C.S. § 9711(a)(1). This Court has repeatedly interpreted Section 9711(a)(1) as providing that "the same jury which renders the verdict of murder in the first degree is the same jury which is to determine whether the sentence is to be death or life imprisonment." *Commonwealth v. Bryant*, 524 Pa. 564, 574 A.2d 590, 595 (1990) (citing *Commonwealth v. Haag*, 522 Pa. 388, 562 A.2d 289 (1989); *Commonwealth v. Williams*, 514 Pa. 62, 522 A.2d 1058 (1987)).

Additionally, the Sentencing Code expressly permits the penalty jury to consider capital defendants' prior murder

convictions as aggravating circumstances, 42 Pa.C.S. § 9711(d)(11), and sets forth precisely how the jury should consider such aggravating circumstances in its deliberations. *See* 42 Pa.C.S. § 9711(c)(1)(iv) (providing that "[t]he verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance specified in subsection (d) and no mitigating circumstance or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances"). Thus, the trial court followed precisely the prescribed statutory scheme by impaneling one jury for both the guilt and penalty phases of the trial, and by permitting the Commonwealth to present Appellant's prior murder conviction as an aggravating circumstance. Moreover, as noted, the trial court was well within its discretion when it precluded discussion of Appellant's prior murder during *voir dire*. *See Commonwealth v. Paolello*, 665 A.2d at 451 (holding that the trial court did not abuse its discretion by precluding defense counsel from questioning jurors during *voir dire* regarding their opinions and involvement with alcohol where the manner of the victim's death included a forced lethal consumption of alcohol).

Finally, and significantly, the trial court's refusal to impanel separate juries for the guilt and penalty phases of trial did not impact Appellant's ability to "life qualify" the jury. Life qualification of the jury has been described as "the process by which counsel or the court identifies and excludes prospective jurors who have a fixed opinion that a sentence of death should always be imposed for a conviction of first degree murder." *Commonwealth v. Boxley*, 575 Pa. 611, 838 A.2d 608, 612 n. 2 (2003); *Commonwealth v. Keaton*, 556 Pa. 442, 729 A.2d 529, 542 n. 9 (1999).

The record establishes that all prospective jurors were asked whether they had a predisposition to impose the sentence of death for a first degree murder conviction. *See* N.T., Dec. 6, 2010, at 24 (where the court inquired whether the jurors "have any moral, religious, or conscientious scruples that would prevent [them] from sentencing—from returning a sentence of life imprisonment under the facts that I have

given to you"). Individualized *voir dire* followed, and none of the persons selected to serve on Appellant's jury indicated a personal objection to imposing life imprisonment or a predisposition for imposing the death sentence upon a person convicted of first degree murder. Thus, Appellant was not denied his right to life qualify the jury, and the trial court did not err in denying Appellant's request to bifurcate the jury for the guilt and penalty phases of trial.

## VI. Propriety of Penalty Phase Instruction and Verdict Slip

 As background for Appellant's next claim, we reiterate that during the penalty phase of trial and in support of the catchall mitigating circumstance set forth at 42 Pa.C.S. § 9711(e)(8), Appellant presented the following evidence: his designation as a special education student, the lack of a relationship with his father, the lack of a father figure in his life, his incarceration at a young age, his religious commitment, the fact that he is the father of two children, and his good relationship with his mother and sisters. Appellant thereafter requested that the trial court instruct the jury regarding each of these mitigating factors and to list each enumerated factor on the verdict slip.

The trial court denied Appellant's request, and instructed the jury to consider the two mitigating circumstances for which some evidence was presented, *i.e.,* the age of Appellant at the time of the murder, and the catchall mitigating circumstance. *See* N.T., Dec. 17, 2010, at 1013 (stating, "[i]n this case, under the Sentencing Code, the following matters, if proven to your satisfaction by a preponderance of the evidence, can be mitigating circumstances: One, the age of the Defendant at the time of the crime. Two, any other evidence of mitigation concerning the character and record of the Defendant and the circumstances of the Defendant's offense.").[10] Similarly, the verdict slip provided that the two mitigating circumstances submitted to the jury were "[t]he

10. The trial court further advised the jury on the respective burdens of proof and the manner by which to weigh mitigating and aggravating circumstances.

age of the defendant at the time of the crime," and "[a]ny other evidence of mitigation concerning the character and record of the defendant and the circumstances of the defendant's offense." Verdict Slip at 1. As noted *supra*, the jury found that the two aggravating circumstances outweighed the only mitigating circumstance found, *i.e.*, the catchall mitigator, which the jury listed as "relationship with family." [11]

Appellant reiterates his argument that the trial court erred by denying his request to instruct the jury regarding each item of mitigation evidence and to list separately each enumerated factor on the verdict slip. He contends that the trial court's failure to do so resulted in the jury giving non-statutory mitigating factors less consideration and treatment. Appellant acknowledges there is no Pennsylvania statute or case law in support of his position, and instead relies on federal case law prohibiting states from restricting the presentation of non-statutory mitigating circumstances in a capital case, *Hitchcock v. Dugger*, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), and prohibiting states from barring relevant mitigation evidence from being presented and considered during the penalty phase of a capital trial. *Skipper v. South Carolina*, 476 U.S. 1, 4, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986); *Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).

The trial court rejected Appellant's contention, addressing in its opinion only the verdict slip component of the claim. The trial court held that the verdict slip given to the jury complies with and is in the form mandated by Pa.R.Crim.P. 807(A)(1) and 808,[12] and, thus, was appropriate. It further

11. As noted, the jury found two aggravating circumstances—that Appellant committed the killing during the perpetration of a felony and that Appellant had a prior murder conviction. The jury did not find the mitigating circumstance of Appellant's age at the time of the crime.

12. Pennsylvania Rule of Criminal Procedure 807(A)(1) provides that "[i]n all cases in which the sentencing proceeding is conducted before a jury, the judge shall furnish the jury with a jury sentencing verdict slip in the form provided by Rule 808." Rule 808, in turn, sets forth the actual form used by the jury, which directs the jury how to complete the

emphasized that the jury found that Appellant's relationship with his family was a mitigating circumstance, despite this circumstance not being specifically set forth on the verdict slip.

In refuting Appellant's claim, the Commonwealth emphasizes that there is no authority requiring trial courts to enumerate, as part of the closing penalty instruction or on the verdict slip, each specific item of mitigation evidence that would be encompassed by the catchall mitigating circumstance. Thus, it concludes, the trial court did not err by denying Appellant's request to do so. The Commonwealth further submits that Appellant's reliance on the federal cases cited above is misplaced because the trial court did not preclude the presentation or consideration of any mitigation evidence during Appellant's penalty hearing. Rather, the Commonwealth asserts, the trial court instructed the jury as mandated by Section 9711(c) of the Sentencing Code, entitled, "Instructions to jury," which provides, in relevant part, that "Before the jury retires to consider the sentencing verdict, the court shall instruct the jury on the following matters: . . . The mitigating circumstances specified in subsection (e) as to which there is some evidence." 42 Pa.C.S. § 9711(c)(1)(ii). Accordingly, the Commonwealth concludes, the trial court's instruction on the catchall mitigating circumstance was sufficient to encompass any and all mitigating evidence relating to the character and record of Appellant and the circumstances of his offense.

We agree. Appellant fails to offer any authority and we are aware of none that requires the trial court to enumerate in penalty jury instructions or on the verdict slip the distinct categories of catchall mitigation evidence presented. The Commonwealth cogently notes that the federal cases upon which Appellant relies have no application here, where the trial court did not restrict the type of mitigation evidence

verdict slip, provides a space to enumerate the mitigating and aggravating circumstances submitted to the jury, and directs the jury to record the aggravating and mitigating circumstances found, as well as the sentence to be imposed.

presented or advise the jury to ignore non-statutory mitigating factors.

Our decision in *Commonwealth v. King,* 554 Pa. 331, 721 A.2d 763, 777 (1998), is instructive on Appellant's claim of an inadequate jury instruction on mitigation. In *King,* this Court rejected the claim that the defendants were denied an impartial capital sentencing jury because the trial court failed to instruct the jurors that they were permitted to consider feelings of sympathy or mercy for the defendants when deliberating their sentence. We held that by relying on federal case law prohibiting states from barring relevant mitigation evidence from being presented and considered during a capital penalty trial, the defendants misapprehended the distinction between allowing the jury to consider mitigating evidence and guiding their consideration. *Id.* at 777 (citing *Saffle v. Parks,* 494 U.S. 484, 493, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990)).

In *King,* we recognized that the trial court, at the outset and at the close of the penalty phase, clearly instructed the jurors that they were required to consider "any other evidence of mitigation concerning the character and record of the defendants and the circumstances of [their] offense." *Id.* at 778. We emphasized that the trial court had also instructed the jury concerning the parties' respective burdens of proof and the proper manner of weighing aggravating circumstances against the mitigating circumstances. Accordingly, we concluded that, when read in its entirety, the trial court's jury charge fully apprised the jury of its duties concerning mitigation evidence. *Id. See also Commonwealth v. Lesko,* 509 Pa. 67, 501 A.2d 200, 207 (1985) (rejecting a claim that the trial court erred in instructing the jury to disregard sympathy when deliberating a capital sentence on the basis that the trial court properly charged the jury regarding the broad mitigation provision of Section 9711(e)(8), thereby satisfying the pertinent constitutional requirements).

The same is true in the instant case. By relying on federal case law prohibiting the restriction of mitigation evidence in a capital penalty proceeding, Appellant, like the defendants in *King,* misapprehends the distinction between allowing the jury

to consider mitigating evidence and guiding its consideration. Here, the trial court permitted full consideration of mitigation evidence, and guided the jury by instructing it to consider "any other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense" pursuant to Section 9711(e)(8). Also as in *King*, the trial court instructed the jury concerning the parties' respective burdens of proof and the manner of weighing aggravating circumstances against the mitigating circumstances when deliberating on the sentence to be imposed.

▮ Finally, as noted, Appellant offers no authority requiring trial courts to list each category of catchall mitigation evidence on the verdict slip. In fact, case law of this Court has held to the contrary. *See Commonwealth v. Miller*, 560 Pa. 500, 746 A.2d 592, 604 (2000) (rejecting claim that a verdict slip that was identical to the form mandated by Pa.R.Crim.P. 358A [renumbered as Pa.R.Crim.P. 808] prevented the jury from considering mitigation evidence presented by the defendant because such evidence was not specifically listed on the form or enumerated in the jury charge); *see also Commonwealth v. Reyes*, 600 Pa. 45, 963 A.2d 436, 442 (2009) (holding that the jury's finding of various factors supporting the "catchall" mitigating circumstance set forth at 42 Pa.C.S. § 9711(e)(8) "did not metamorphose those factors into additional statutory mitigators"). Accordingly, Appellant is not entitled to relief on this claim.

## VII. Propriety of Sentences for Robbery and Burglary

▮ Appellant next argues that after the jury rendered a verdict of death, based, in part, on the Section 9711(d)(6) aggravating circumstance of committing the killing during the perpetration of a felony, the trial court again relied on that same factor to enhance the sentences imposed for his burglary and robbery convictions in violation of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.[13] He asserts that the trial court deviated from the

---

**13.** Appellant suggests that because his sentencing challenge is based on the Double Jeopardy Clause, it implicates the legality of his sentence.

Sentencing Guidelines on one of the two robbery convictions, as well as on the burglary conviction, and ultimately imposed the maximum sentence permitted by law, *i.e.,* three consecutive sentences of ten to twenty years' imprisonment, resulting in an aggregate sentence of thirty to sixty years' imprisonment for the three felonies.[14] The trial court explained that it deviated from the Sentencing Guidelines on the robbery count because Appellant fatally shot the victim in cold blood during the robbery and in the presence of Generette. Similarly, the trial court explained that it deviated from the Sentencing Guidelines on the burglary count because Appellant fatally shot the occupant of the apartment he was burglarizing. Appellant concludes that this "double counting" of the criminal act of killing the victim violates the Double Jeopardy Clause. In support of his position, he relies on the United States Supreme Court's decision in *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983), which holds that in cases involving cumulative sentences imposed in a single trial, the Double Jeopardy Clause prevents the sentencing court from prescribing greater punishment than the legislature intended.

*See* Appellant's Brief at 32 (citing *Commonwealth v. Andrews,* 564 Pa. 321, 768 A.2d 309 (2001) for the proposition that averments relating to merger or double jeopardy implicate the legality of the sentence imposed). The Commonwealth does not refute this characterization or advocate that we decline to address the claim because it constitutes a challenge to the discretionary aspects of his sentence, which cannot be examined on appeal absent the filing of a statement of reasons relied upon by the defendant pursuant to Pa.R.A.P. 2119(f). This Court has recently been divided on the appropriate standard to apply to determine whether a claim implicates the legality of a sentence imposed. *See Commonwealth v. Foster,* 609 Pa. 502, 17 A.3d 332 (2011) (plurality). Considering that we lack advocacy as to whether Appellant's claim implicates the legality of his sentence, all the parties and the lower court addressed the issue on the merits, and it is clear that Appellant is not entitled to relief on the merits of the claim, we assume, arguendo, the existence of jurisdiction over this claim for purposes of this appeal, and refrain from engaging in a superfluous discussion regarding whether the claim also fails as a result of Appellant's failure to file a statement of reasons relied upon pursuant to Pa.R.A.P. 2119(f).

14. As charged here, both robbery counts and the burglary count are graded as first degree felonies, 18 Pa.C.S. §§ 3701(b), and 3502(c)(1), respectively, which are subject to a maximum sentence of twenty years of imprisonment. *Id.*

The trial court rejected Appellant's contention, finding that it did not abuse its discretion in imposing the maximum sentences permitted by law on his robbery and burglary convictions, and directing that such sentences run consecutive to each other. The court emphasized that it explained on the record its reasons for deviating from the Sentencing Guidelines, and held that it was of no moment that such reasons corresponded with the aggravating circumstance of committing the killing during the perpetration of a felony.

The Commonwealth agrees with the trial court's reasoning and contends that Appellant has failed to demonstrate that the court abused its discretion. It maintains that trial courts may sentence defendants outside the Sentencing Guidelines, as the Guidelines are merely suggestive and not proscriptive. *Commonwealth v. Yuhasz*, 592 Pa. 120, 923 A.2d 1111, 1119 (2007) (holding that the Pennsylvania Sentencing Guidelines are purely advisory in nature). Further, the Commonwealth emphasizes that the sentences imposed for Appellant's two counts of robbery and one count of burglary did not exceed the statutory maximum for such offenses. *See* n. 14, *supra.* Thus, it maintains, Appellant's reliance on *Missouri v. Hunter* is misplaced as that case made clear that the Double Jeopardy Clause only prevents a sentencing court from imposing punishment greater than that authorized by the legislature in cases involving cumulative sentences imposed in a single trial. Finally, the Commonwealth submits that Appellant's claim of a Double Jeopardy Clause violation is unsupported as this Court has already rejected such a claim. *See Commonwealth v. Fletcher*, 580 Pa. 403, 861 A.2d 898, 912 (2004) (holding that aggravating circumstances in capital penalty proceedings are not separate penalties or offenses to which the protection against double jeopardy applies).

We conclude that Appellant is not entitled to relief on this claim. In sum, Appellant has failed to demonstrate that the trial court violated the Double Jeopardy Clause by imposing the maximum sentences permitted by the Crimes Code for his robbery and burglary convictions. Both this Court and the United States Supreme Court have held that aggravating

circumstances do not constitute separate penalties or offenses, and thus, no double jeopardy rights are implicated by the submission of aggravating circumstances to the jury. *Fletcher, supra; Commonwealth v. Gibbs*, 533 Pa. 539, 626 A.2d 133, 136 (1993); *Poland v. Arizona*, 476 U.S. 147, 156, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986). Under these circumstances, the trial court's legal sentences on the robbery and burglary convictions should remain undisturbed.

## VIII. Statutory Review

Having concluded that Appellant's convictions were proper and that none of his claims of error entitles him to relief, we must affirm his death sentence unless we find that: (i) the sentence was the product of passion, prejudice, or any other arbitrary factor; or (ii) the evidence fails to support the finding of at least one aggravating circumstance. *See* 42 Pa.C.S. § 9711(h)(3). Upon careful review of the record, we are persuaded that Appellant's death sentence was not the product of passion, prejudice, or any other arbitrary factor, but rather resulted from evidence demonstrating that Appellant intentionally and deliberately shot the victim in the head at close range in the presence of Generette, as he stole various items from the apartment and its occupants. We also conclude that the evidence was sufficient to support the two aggravating factors found by the jury. First, the aggravating circumstance that Appellant committed the killing during the perpetration of a felony, 42 Pa.C.S. § 9711(d)(6), is supported by the evidence of record establishing that Appellant shot the victim during a robbery and burglary. Further, it is undisputed that Appellant "has been convicted of another murder committed in any jurisdiction and committed either before or at the same time of the offense at issue." 42 Pa.C.S. § 9711(d)(11). *See* N.T., Dec. 17, 2010, at 963 (providing that the parties stipulated that on July 27, 1995, Appellant pled guilty in Maryland to the crime of second degree murder).

Accordingly, for the foregoing reasons, we affirm the verdict and sentence of death. The Prothonotary of this Court is directed to transmit the complete record of this case to the

Governor of Pennsylvania in accordance with Section 9711(i) of the Sentencing Code, 42 Pa.C.S. § 9711(i).

Former Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Chief Justice CASTILLE, Justices EAKIN, TODD and McCAFFERY join the opinion.

Chief Justice CASTILLE files a concurring opinion in which Justice EAKIN joins.

Justice SAYLOR files a concurring opinion.

Chief Justice CASTILLE, concurring.

I join the Majority Opinion in full, writing separately only to Part VII, which involves appellant's challenge to his sentences for robbery and burglary, imposed by the trial court following the jury's imposition of the death penalty.

In footnote 13, the Majority states that appellant has posed this claim as implicating the constitutional proscription against double jeopardy, which therefore implicates the legality of his sentence. The Commonwealth, in turn, responded to the claim on the merits and did not argue that the claim (or aspects of it) might be more properly framed as going to the discretionary aspects of sentencing, which cannot be examined on appeal absent compliance with Section 9781 of the Sentencing Code, 42 Pa.C.S. §§ 9701–9799.41, and the procedure outlined in Pa.R.A.P. 2119(f). The Majority acknowledges that there has been division on the Court concerning how to identify whether claims implicate the legality or discretionary aspects of a given sentence, citing the variety of views expressed in *Commonwealth v. Foster*, 609 Pa. 502, 17 A.3d 332 (2011). The Majority concludes that under these circumstances, without an on-point trial court expression or advocacy in briefing to the Court, the best course is to "assume, *arguendo*, the existence of jurisdiction over this claim for purposes of this appeal, and refrain from a superfluous discussion regarding whether the claim also fails on procedural grounds under Pa.R.A.P. 2119(f)." Majority Op. at 199 n. 13, 82 A.3d at 401 n. 13. I have no objection to proceeding to the

merits under the circumstances the Majority notes, since the Majority's assumption of hypothetical jurisdiction is the most efficient manner of disposing of the claim in this case arising on our direct capital appeal docket. *See Commonwealth v. Abdul–Salaam,* 571 Pa. 219, 812 A.2d 497, 503 (2002); *Commonwealth v. Hawkins,* 598 Pa. 85, 953 A.2d 1248, 1258 n. 4 (2008) (Saylor, J., concurring). On the merits so reached, I join in full.

However, I would add that, while Rule 2119(f) is certainly "procedural," it exists to ensure a jurisdictional limitation. If a claim implicates the discretionary aspects of a sentence, the direct appeal court—in capital cases, this Court—lacks jurisdiction unless the requirement set forth by 42 Pa.C.S. § 9781(b) is met: "The defendant or the Commonwealth may file a petition for allowance of appeal of the discretionary aspects of a sentence . . . to the appellate court that has initial jurisdiction for such appeals. Allowance of appeal may be granted at the discretion of the appellate court where it appears that there is a substantial question that the sentence imposed is not appropriate. . . ." Thus, as a matter of jurisdiction, a discretionary sentencing claim cannot be passed upon absent a preliminary determination of a substantial question. Implementing the jurisdictional qualifier, Rule 2119 then provides that the appellant (whether it be the defendant or the Commonwealth) must include in the principal brief a separate "concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence," which "shall immediately precede the argument on the merits with respect to the discretionary aspects of sentence." Pa.R.A.P. 2119(f). *See Commonwealth v. Mouzon,* 571 Pa. 419, 812 A.2d 617, 621–22 (2002) (plurality).

Notably, in *Commonwealth v. Tuladziecki,* 513 Pa. 508, 522 A.2d 17, 18–20 (1987), the Court stressed that the Rule 2119(f) concise statement "operates as the 'petition for allowance of appeal' under the Sentencing Code. . . . In effect, the filing of the 'petition for allowance of appeal' contemplated by the statute is deferred by these rules until the briefing stage, where the question of the appropriateness of the discretionary aspects of the sentence may be briefed and argued in the

usual manner." And although the concise statement appears in the same filing as the argument on the merits, in this context, they represent distinct inquiries and entail a jurisdictional component:

So long as the [party seeking appeal] is required at some point to demonstrate a "substantial question" in accordance with the statute to invoke [appellate] jurisdiction, this procedure is sound. [An appeal court] may not, however, be permitted to rely on its assessment of the argument on the merits of the issue to justify *post hoc* a determination that a substantial question exists. If this determination is not made prior to examination of and ruling on the merits of the issue of the appropriateness of the sentence, the [appellant] has in effect obtained an appeal as of right from the discretionary aspects of a sentence. It is elementary that such an enlargement of the appeal rights of a party cannot be accomplished by rule of court. For this reason it is essential that the rules of procedure governing appeals such as this be followed precisely.

*Id.* at 19.

If appellant's current claim in fact implicates the discretionary aspects of the sentences imposed for his lesser offenses, and no substantial question is raised, this Court would lack jurisdiction to engage in a review of the merits under Section 9781(b). This would appear to be the case here. Appellant's sentencing claim entails a double jeopardy element, and he bandies the phrase about throughout his argument. Nevertheless, much of his argument in this regard reads like a typical challenge to the discretionary aspects of his sentence. Notably, the Commonwealth's brief, even though it does not pose a Section 9781(b) and Rule 2119(f) challenge, speaks repeatedly of the discretion properly exercised by the trial judge.

Justice EAKIN joins the opinion.

Justice SAYLOR, concurring.

I join the majority opinion, except for Parts IV and V, as to which I concur in the result. I find the preclusion of what

Appellant now suggests was a critical portion of his life-qualification strategy to be problematic on the merits; however, I would note that Appellant did not lodge a contemporaneous objection to the trial court's ruling. *See* N.T., Dec. 6, 2010, at 30–31.[1] Accordingly, I would refrain from addressing this issue at this stage.

1. The issue was touched upon in the pre-trial proceedings on consideration of Appellant's motion seeking empanelment of a separate penalty jury. *See* N.T., June 3, 2010, at 14–18. At such time, it was counsel's position that they were presented with a Hobson's choice between curtailing the life qualification inquiry of venirepersons or proceeding with the questioning potentially to the substantial prejudice of their client. *See id.* The trial court's response was to observe that "generally speaking, in voir dire, [defense counsel] can certainly question the prospective jurors about aggravating circumstances without specifically revealing to the jury that the Defendant in the case has a previous murder conviction. That's generally what's done." *Id.* at 17.

As I read the transcript, counsel did not express the position that the defense would actually proceed with a fuller range of life qualification inquiries, in the event the court would refuse to provide for a separate penalty jury. Moreover, nothing which I have reviewed in the record of the pre-trial proceedings suggests that the present challenge to the curtailment of life-qualification questioning at the actual juror venire is preserved. Certainly, Appellant does not make an effort to identify any place in the record where it is preserved.