J-A08014-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
TARENCE  REASON :
:
Appellant : No. 2922 EDA 2018

Appeal from the Judgment of Sentence Entered April 5, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001133-2017

BEFORE:  LAZARUS, J., KUNSELMAN, J., and McCAFFERY, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED JUNE 22, 2020**

Tarence Reason appeals from the judgment of sentence, entered in the Court of Common Pleas of Philadelphia County after a jury convicted him of first-degree murder, two violations of the Uniform Firearms Act, and possession of an instrument of crime (PIC).[1]  Reason challenges the court's denial of his request for a charge of self-defense, the sufficiency of the evidence with regard to his murder and PIC convictions, and the weight of the evidence with regard to the first-degree murder and PIC convictions.  After careful review, we affirm.

On the evening of December 2, 2015, Reason's friend, Louis Pacheco,[2] visited Reason and his live-in girlfriend in their home located near the

---

[1] 18 Pa.C.S.A. §§ 2502(a), 6106(a)(1) and 6108, and 907(a), respectively.

[2] Referred to as "White Boy" or "Angel" by witnesses throughout the trial.

intersection of Westmoreland Street and Germantown Avenue in Philadelphia. Pacheco informed Reason that, earlier that day, Calvin Houston engaged Pacheco in a physical fight. Reason, who was already serving a probationary sentence pursuant to a previous conviction, armed himself with a nine-millimeter semi-automatic handgun and accompanied Pacheco and another unnamed individual to the nearby corner of Westmoreland Street and Germantown Avenue in Philadelphia.

There, video evidence confirms that the three men found Houston accompanied by his two cousins, Aaron Franklin and James Williams. Franklin, in an effort to end the argument and make peace, approached Pacheco and Reason in the street. Eventually, Franklin told Reason that the fighting should stop, "it's over, let it go." **See** N.T. Trial, 04/03/18, at 120. Reason kept his hands in his hoody pocket throughout the group's conversation. During the course of the conversation, Pacheco moved toward Houston while the unnamed individual moved closer to the group and placed himself between two cars. At that point, Williams punched Pacheco in the face. Reason, with his hand still in his pocket, stepped back from the group and fired a gun through his hoody pocket, striking Franklin in his chest. Franklin immediately fell to the ground bleeding. Other shots were fired by a man named "Scurry" who came out of a nearby bar. Scurry began firing even though he was not affiliated with either group of individuals. Franklin died minutes later at nearby Temple University Hospital.

At trial, Houston testified that he observed the outline of a gun in Reason's pocket during the verbal exchange that preceded the shooting. Williams testified that he saw a flash come from Reason's direction when the gun was fired, and that no one else was standing near Reason at that time. Williams and Houston both testified that no other person pulled out a firearm or pointed one at any of the other individuals in the group that night.

The bullet that struck Franklin entered his sternum, hit his ascending aorta—a major artery—and injured his trachea, the third and fourth thoracic vertebrae, and eventually lodged in his back muscles. Philadelphia police officers recovered a nine-millimeter bullet from Franklin's body. The Philadelphia Police determined that the same gun that killed Franklin also ejected two "fired cartridge casings" found at the scene, fired a bullet into a white Jaguar parked on the street nearby, and also expelled an additional live round at the scene of the shooting.

After the shooting, Reason ran from the scene and did not return home. Reason also stopped reporting to his probation officer after Franklin's death. One year after the shooting, the Philadelphia Police Department's S.W.A.T. Unit executed an arrest warrant at Reason's new residence in connection with Franklin's death. When the S.W.A.T. Unit knocked and announced their presence, Reason attempted to flee from the rear of the residence. Upon seeing the officers outside the property, Reason re-entered the residence and was arrested.

A jury convicted Reason of the above-listed charges on April 3, 2018. The court sentenced Reason immediately after the jury's verdict to a mandatory life sentence for first-degree murder, two-and-one-half to five years for PIC and carrying firearms on the streets of Philadelphia, and three-and-one-half to seven years for firearms not to be carried without a license. Reason filed a timely post-sentence motion that was denied by operation of law on August 10, 2018. Appellate counsel failed to file a timely direct appeal, but on September 26, 2018, the trial court reinstated Reason's appellate rights *nunc pro tunc*. Both Reason and the trial court then complied with Pa.R.A.P. 1925. This timely appeal follows.

Reason first claims that the trial court erred in denying his request for a jury instruction on the defense of justification. Specifically, Reason claims that,

> the decedent[, Franklin,] was known to carry firearms, [] was in fact armed on the night in question, and [] was loud, argumentative and angry. Additionally, [Reason] did not actually confront [Franklin]. Upon arrival at the [scene of the shooting, Reason] stayed across the street and merely asked to speak with Williams. By Williams' own admission[, Reason] just wanted to talk things over with him. Rather than engage in conversation with [Reason], [Franklin], Williams and Houston confronted [Reason] with [Franklin] becoming aggressive, agitated and loud. It was only after Williams engaged in the unlawful use of force when he punched [Pacheco,] slamming him into a parked car with a "boom," that [Reason] fired his weapon.

Appellant's Brief, at 17-18.

It is not enough to simply request a jury instruction to preserve the issue for appeal. To preserve an issue for appeal as to a portion of a jury

charge, a party must make a specific objection before the jury retires to deliberate. **Commonwealth v. Pressley**, 887 A.2d 220, 222 (Pa. 2005); Pa.R.Crim.P. 647(C). The Pennsylvania Supreme Court explained in **Pressley** that the required specific objection "serves the salutary purpose of affording the court an opportunity to avoid or remediate potential error, thereby eliminating the need for appellate review of an otherwise correctable issue." **Id.** at 224.

Here, Reason requested a jury instruction on justification and self-defense. Nevertheless, Reason failed to make a specific objection at trial when Reason's requested instruction was denied by the trial court. Reason did not specifically object to the ruling; thus, his claim was not properly preserved for appeal. **Id.**; Pa.R.Crim.P. 647(C).

Reason's second claim on appeal is a challenge to the sufficiency of the evidence regarding his murder and PIC convictions. To support this claim, Reason argues that the "Commonwealth failed to prove beyond a reasonable doubt that [Reason] possessed the requisite mental state for [first-degree murder]" and that Reason "discharged a firearm because he reasonably believed it to be necessary to defend himself or others." **See** Appellant's Brief, at 6.

The standard of review for evaluating sufficiency of the evidence claims is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient

evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. Further, in viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the court must give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

**Commonwealth v. Harden**, 103 A.3d 107, 111 (Pa. Super. 2014) (citations, internal quotations, and bracketed material omitted).

"To obtain a first-degree murder conviction, the Commonwealth must demonstrate that a human being was unlawfully killed, the defendant perpetrated the killing, and the defendant acted with malice and a specific intent to kill." **Commonwealth v. Mattison**, 82 A.3d 386, 392 (Pa. 2013) (quoting **Commonwealth v. Milton Montalvo**, 986 A.2d 84, 92 (Pa. 2009)); 18 Pa.C.S.A § 2502(a). "Specific intent to kill can be established through circumstantial evidence, such as the use of a deadly weapon on a vital part of the victim's body." **Mattison**, 82 A.3d at 392 (quoting **Commonwealth v. Rega**, 933 A.2d 997, 1009 (Pa. 2007)). "Malice consists either of an express intent to kill or inflict great bodily harm, or of a wickedness of disposition,

hardness of heart, cruelty, recklessness of consequences and a mind regardless of social duty indicating an unjustified disregard for the probability of death or great bodily harm and an extreme indifference to the value of human life." *Commonwealth v. Taylor*, 337 A.2d 545, 545 (Pa. 1975) (brackets and quotations omitted) (quoting *Commonwealth v. Carroll*, 412 Pa. 525, 194 A.2d 911 (1963)).

Regarding possessing an instrument of crime, "the offense requires proof of possession of such instrument, coupled with an intention to employ it criminally." *Commonwealth v. Andrews*, 768 A.2d 309, 313 (Pa. 2001); 18 Pa.C.S.A. § 907(a). "It is the actor's criminal purpose that provides the touchstone of his liability" for PIC. *Id.* at 317. Such purpose may be inferred from the circumstances surrounding the possession. *Id.* at 318. Our Supreme Court has long held that an "appellant's use of a loaded gun on his victim is more than sufficient to establish his guilt of possession of an instrument of crime." *Commonwealth v. Santiago*, 980 A.2d 659, 662 (Pa. Super. 2009) (quoting *Commonwealth v. McNair*, 603 A.2d 1014, 1017 (Pa. 1992)).

Here, Reason used a gun to shoot Franklin in the chest and Franklin died as a result of that injury. The jury, in returning a guilty verdict for first-degree murder, rejected Reason's voluntary manslaughter argument—that Reason had an unreasonable belief that killing Franklin was justified. Instead, the jury credited the testimony of witnesses Houston and Williams that Reason fired a deadly weapon into Franklin's chest, which was a vital part of Franklin's body. Thus, there was sufficient evidence, to prove beyond a reasonable doubt, that

Reason possessed the requisite malice and specific intent to kill, and he used a gun to bring about his desired result. **Harden**, **supra**.

Reason's final claim is that the weight of the evidence did not support his murder and PIC convictions. Reason argues that because the evidence showed that the decedent was armed, was the aggressor, and was known in the neighborhood to carry firearms, and because the eyewitnesses were inconsistent, "unbelievable degenerate[s,] and dishonest drug dealers," the evidence proved that there was another shooter at the scene. **See** Appellant's Brief, at 6. We disagree.

The standard of review for a weight of the evidence claim is as follows:

> An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence, do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

**Commonwealth v. Stokes**, 78 A.3d 644, 650 (Pa. Super. 2013) (quoting

**Commonwealth v. Widmer** 744 A.2d 745, 751-52 (Pa. 2000)).

> In other words, a court may grant a new trial because the verdict is against the weight of the evidence only when the verdict rendered is so contrary to the evidence as to shock one's sense of justice. The determination of whether to grant a new trial rests within the discretion of the trial court, and we will not disturb this determination absent an abuse of discretion.

*Id.* (quoting *Commonwealth v. Bruce*, 916 A.2d 657, 665 (Pa. Super. 2007) (internal citations omitted)).

Here, two eyewitnesses testified at trial and their testimony was consistent with video evidence presented. Calvin Houston and James Williams each testified that Franklin was an unarmed peacemaker at the time of the group conversation that resulted in the shooting. Moreover, the evidence demonstrates that Reason fled and remained at-large for over one year after the shooting, showing consciousness of guilt. *See Commonwealth v. Hargrave*, 745 A.2d 20, 23 (Pa. Super. 2005) (holding that, "[f]light does indicate consciousness of guilt, and a trial court may consider this as evidence, 'along with other proof, from which guilt may be inferred.'"). The jury's decision to credit Houston's and Williams' eyewitness testimony under these circumstances did not "shock one's sense of justice." *See Stokes*, *supra*. Accordingly, the trial court's denial of Reason's weight of the evidence claim does not constitute an abuse of discretion. *Id.*

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/22/20

- 9 -