J-S64004-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DENNIS FULTON | |
| Appellant | No. 3791 EDA 2015 |

Appeal from the Judgment of Sentence entered November 6, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0003414-2014

BEFORE:  STABILE, J., SOLANO, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.:                 **FILED DECEMBER 13, 2016**

Appellant, Dennis Fulton, appeals from the judgment of sentence imposed on November 6, 2015 in the Court of Common Pleas of Philadelphia County after a jury convicted him of first-degree murder, robbery, possessing instruments of crime ("PIC"), and two violations of the Firearms Act ("VUFA").[1]  Appellant contends that the evidence was insufficient to support the verdicts.  Alternatively, Appellant argues that the verdicts were against the weight of the evidence.  Following review, we affirm.

In its January 28, 2016 Rule 1925(a) opinion, the trial court summarized the evidence presented at trial, complete with references to the

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(a), 3701, 907, 6106 and 6108, respectively.

testimony and evidence received during Appellant's four-day trial. Based upon our own review, we find the trial court's summary is supported by the trial transcripts. Therefore, we adopt the trial court's statement of facts as our own and incorporate it herein by reference as if fully set forth. Trial Court Opinion, 1/28/16, at 2-7. Briefly, Appellant was arrested and charged with the crimes identified above, all in relation to the shooting death of 61-year old Rudolph Wilkerson, a "hack driver" who provided unlicensed taxi rides to Appellant and several other individuals who lived in Appellant's neighborhood. Wilkerson's body was discovered shortly after midnight on June 19, 2010 in the roadway near East Wolf Street in a commercial area of Philadelphia. Wilkerson's vehicle was observed shortly thereafter and secured by police later that morning.

At Appellant's trial, significant circumstantial evidence was presented, including telephone records revealing several telephone calls from Appellant's cell phone to Wilkerson's cell phone shortly before the murder, and testimony indicating that in 2008 Aisha Evans, the mother of Appellant's two children, purchased a Smith and Wesson revolver—consistent with the murder weapon—for Appellant and did so in his name because he was ineligible to be licensed. Evans and a second witness indicated that Appellant confessed to the murder, telling Evans he needed money and telling another witness that he was angry because Wilkerson "disrespected" Evans.

At the conclusion of Appellant's trial, the jury returned verdicts of guilty as reflected above. The trial court sentenced Appellant to life without the possibility of parole for the murder conviction, with consecutive sentences of five to ten years for robbery, one to two years for PIC, and one to two years for each of the VUFA violations, resulting in an aggregate sentence of life imprisonment without parole plus eight to sixteen years.

Appellant filed a timely post-sentence motion. The trial court denied the motion and this timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925. Appellant now asks this Court to consider two issues:

1. Is [Appellant] entitled to an [a]rrest of [j]udgment on the charge of [m]urder in the [f]irst [d]egree and all related offenses as the evidence is insufficient to sustain the verdict?

2. Is [A]ppellant entitled to a new trial as the verdict was against the weight of the evidence?

Appellant's Brief at 3.

In **Commonwealth v. Mattison**, 82 A.3d 386 (Pa. 2013), our Supreme Court reiterated:

In reviewing the sufficiency of the evidence, we examine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, support the jury's finding of all the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence.

**Id.** at 392 (citation omitted). Here, the trial court summarized the evidence in the context of each of Appellant's convictions and determined that the

evidence was sufficient to support each verdict. Our examination of the evidence—including reasonable inferences drawn therefrom—confirms that the evidence, while circumstantial, supports the jury's findings of all elements of each offense beyond a reasonable doubt. Therefore, Appellant's first issue fails. We adopt the trial court's analysis of Appellant's sufficiency challenge as our own and incorporate it herein by reference. Trial Court Opinion, 1/28/16, at 7-11.

Appellant also advances an argument that the verdicts were against the weight of the evidence. As our Supreme Court explained in **Commonwealth v. Clay**, 64 A.3d 1049, 1055 (Pa. 2013):

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. **Commonwealth v. Widmer**, 560 Pa. 308, 319, 744 A.2d 745, 751–52 (2000); **Commonwealth v. Brown**, 538 Pa. 410, 435, 648 A.2d 1177, 1189 (1994). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. **Widmer**, 560 Pa. at 319–20, 744 A.2d at 752. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" **Id.** at 320, 744 A.2d at 752 (citation omitted). It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." **Brown**, 538 Pa. at 435, 648 A.2d at 1189.
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.* **Brown**, 648 A.2d at 1189. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. **Commonwealth v. Farquharson**, 467 Pa. 50, 354 A.2d 545 (Pa. 1976). One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> **Widmer**, 560 Pa. at 321–22, 744 A.2d at 753 (emphasis added).

*Id.* at 1054-55.

In his brief, although Appellant "concedes" the strict standard for the grant of a new trial based on weight of the evidence, he suggests:

> [T]here was no persuasive evidence that would have lead any reasonable person to conclude that [Appellant] was guilty and that the Commonwealth had proved its case. Rather, the Commonwealth had the jury engage in reckless speculation, conjecture and surmise as to what might or might not have occurred. Under all of the circumstances, the verdict cannot be said to be supported by the weight of the evidence and [Appellant] must be awarded a new trial.

Appellant's Brief at 11-12. As the trial court recognized, Appellant's "argument is virtually identical to [his] sufficiency challenges, and must fail for the same reasons." Trial Court Opinion, 1/28/16, at 12. The trial court explained the basis for its conclusion that the evidence proved the elements

of each charge and determined that "[n]othing about the verdict shocks this [c]ourt's conscience." ***Id.***

We find no abuse of discretion on the part of the trial court in rejecting Appellant's weight claim. Therefore, Appellant's second issue fails. We hereby adopt and incorporate herein by reference the trial court's analysis of this issue. ***Id.*** at 11-12. A copy of the trial court's opinion shall be attached to this Memorandum. In the event of further proceedings, the parties shall attach a copy of the trial court's opinion to their filings.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/13/2016

**IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA     :    CP-51-CR-0003414-2014

v.

**FILED**

JAN **2 8** 2016

Criminal Appeals Unit
First Judicial District of PA

DENNIS FULTON



CP-51-CR-0003414-2014 Comm. v. Fulton, Dennis
Opinion

7399830451

**OPINION**

**McDermott, J.**                                            **January 28, 2016**

**Procedural History**

On January 6, 2014, the Defendant, Dennis Fulton, was arrested and charged with Murder and related offenses. On November 2, 2015, the Defendant appeared before this Court and elected to be tried by a jury. On November 6, 2015, the jury returned a guilty verdict of First-Degree Murder, Robbery, Firearms Not to be Carried Without a License, Carrying a Firearm on a Public Street in Philadelphia, and Possession of an Instrument of Crime ("PIC").[1]

On this same date, this Court imposed the mandatory sentence of life imprisonment without parole for First-Degree Murder, and consecutive sentences of five to ten years for Robbery, one to two years for Firearms Not to be Carried Without a License, one to two years for Carrying a Firearm on a Public Street in Philadelphia, and one to two years for PIC, for a total sentence of life imprisonment without parole plus eight to sixteen years imprisonment.[2]

On November 13, 2015, the Defendant filed a timely Post-Sentence Motion. On November 18, 2015, this Court denied this motion. On November 30, 2015, the Defendant filed

---

[1] The remaining charge was *nolle prossed.*
[2] All sentences run consecutive to the Defendant's sentence in CP-51-CR-0003189-2011.

a timely Notice of Appeal. On December 14, 2015, this Court ordered the Defendant to submit a Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b). On January 14, 2016, the Defendant filed a timely 1925(b) Statement.

**Facts**

On February 7, 2008, Aisha Evans purchased a Smith & Wesson Model 10 .38 Special revolver, serial number D424759, for the father of her children, the Defendant Dennis Fulton. Evans purchased the revolver for the Defendant because he could not buy the gun himself. N.T. 11/4/2015 at 151–173; N.T. 11/5/2015 at 42–54; Commonwealth Exhibit C-13.

Prior to the murder, the decedent Rudolph Wilkerson, a 61 year-old neighborhood "hack driver," provided several unlicensed taxi rides to the Defendant, Evans, and several others living in the neighborhood. During one hack ride, the decedent allegedly flirted with Evans, which greatly upset the Defendant. N.T. 11/4/2015 at 21–25, 41, 48–49, 153–154.

On June 17, 2010, the decedent purchased thirty bundles of heroin from Frank Johnson, Jr., a drug dealer who occasionally employed the decedent. Edwin Castro, the decedent's neighbor, later observed the decedent transport the heroin in his green 1993 Ford Explorer. N.T. 11/3/2015 at 11; N.T. 11/4/2015 at 100–105.

On June 18, 2010, the evening of the murder, the decedent and Roger Aye, the decedent's close friend, socialized and smoked crack cocaine in the decedent's home. While using a "star 67" prefix to conceal his phone number, the Defendant called the decedent three times between 11 p.m. and 11:34 p.m. and received no response. Once the Defendant called the decedent from his unconcealed number, the decedent immediately returned the Defendant's call and arranged to pick up the Defendant. As he was leaving his home, the decedent told Aye that he needed to pick up a "young boy," referring to the Defendant, near Sixth Street and Emily Street. The

2

decedent never returned home. N.T. 11/3/2015 at 103, 116–117; N.T. 11/4/2015 at 80–83, 94–96; N.T. 11/5/2015 at 118–119.

At 12:33 a.m. on June 19, 2010, Officers Brian Egrie and James Bragg responded to a radio call for an unresponsive male lying on the highway near 16 E. Wolf Street and discovered the decedent lying in a pool of blood. At 12:51 a.m., medics pronounced the decedent dead at the scene. N.T. 11/2/2015 at 62–75, 78–82; N.T. 11/5/2015 at 9.

At approximately 1 a.m. on June 19, auto mechanic John Pilotti observed the decedent's vehicle illegally parked near the intersection of Seventh and Morris Streets, and called a towing service the next morning. That morning, Sergeant Kevin Cannon and Officer Melissa Curcio secured the vehicle and observed interior and exterior bloodstains. N.T. 11/3/2015 at 67–75; N.T. 11/4/2015 at 145–149.

At trial, Dr. Gary Collins, the former Philadelphia Deputy Medical Examiner[3] and an expert in forensic pathology, testified that the decedent suffered fatal, penetrating gunshot wounds to the back left of the head and the right shoulder. The decedent further suffered a fatal perforating gunshot wound to the central chest, a non-fatal, perforating gunshot wound to the mouth, and graze wound behind the right ear.[4] The gunshot wound to the decedent's central chest exhibited a dense stipple pattern indicative of a contact wound. The trajectory of the decedent's back left head and right shoulder gunshot wounds were consistent with shots fired from above and in front of a kneeling decedent. Dr. Collins concluded, to a reasonable degree of scientific certainty, that the cause of death was homicide by multiple gunshot wounds. Two

---

[3] Dr. Collins currently serves as Chief Medical Examiner for the State of Delaware.
[4] The trajectory of graze wound behind the right ear and the penetrating wound to the right shoulder indicated that both wounds were caused by the same bullet.

3

bullets were recovered from the decedent and turned over to the Philadelphia Police Department Homicide Unit. N.T. 11/5/2015 at 3–25.

On July 8, 2010, Officer Jacqueline Davis of the Philadelphia Crime Scene Unit searched the decedent's vehicle and observed a bullet hole in the driver's seat and recovered projectiles from the rear driver's side door and the driver's side seat belt column. Officer Brian Stark, an expert in blood splatter analysis, examined the bloodstains in the vehicle and observed downward flowing bloodstains on the passenger side front door that exhibited significant blood smear. Blood stains on the dashboard and center console indicated that the decedent crawled across the front passenger seat before opening the door. Officer Stark further observed heavier volume drops on the interior panel between the front and rear passenger door, which flowed downward towards the street below. N.T. 11/3/2015 at 60–63, 77–90; N.T. 11/4/2015 at 219–231, 235–250; Commonwealth Exhibit C-22-05, C-22-06.

Officer Stark examined two bloodstains on the highway outside of 16 E. Wolf Street, marked bloodstains A and B. Bloodstain A exhibited a passive droplet pattern and indicated no movement from the blood source, consistent with blood flow from the passenger side door. Bloodstain B, located eleven feet east of bloodstain A, indicated heavy blood flow from the decedents mouth and demonstrated that the decedent crawled west to east along Wolf Street after escaping the truck, smearing blood across the pavement. Blood accumulation on the decedent's shoes, legs and shirt exhibit a pattern consistent to wiping or smearing bloodstain B. The decedent's body laid in a pool of blood six feet away from Bloodstain B. N.T. 11/3/2015 at 34–57.

Officer Ronald Weitman of the Firearms Investigation Unit, a ballistics expert, concluded that all four bullets recovered in this matter were .38/.357 caliber[5] and exhibited "five right twist" rifling markings. Officer Weitman concluded that each bullet was fired from the same weapon. At trial, Officer Weitman testified that all Smith & Wesson Model 10 .38 Special revolvers left "five right" markings on their respective bullets. In 2013, Officer Weitman examined the Smith & Wesson Model 10 revolver belonging to the Defendant and determined that the weapon fired .38 caliber bullets exhibiting "five right" rifling characteristics. Due to corrosion and wear on the weapon's barrel, test firing the weapon produced insufficient microscopic bullet markings to determine whether the recovered projectiles were fired from the Defendant's gun. N.T. 11/4/2015 at 109–142; Commonwealth Exhibit C-29.

On August 7, 2010, Detective Kenneth Rossiter interviewed Aye, who stated that he left the decedent's home at approximately 7 a.m. the morning after the murder. As he travelled home, Frank Johnson Sr., a neighborhood drug dealer and Johnson Jr.'s father, told Aye that the decedent was murdered over 30 bundles of heroin. Aye said that, the day before the shooting, Castro saw the decedent transport the heroin in his green Ford Explorer. N.T. 11/4/2015 at 82–84, 102–103; N.T. 11/5/2015 at 121; Commonwealth Exhibit C-6; Defense Exhibit D-3.

Detective Rossiter recovered the decedent's cell phone and discovered that the Defendant's 267-271-6664 number was the last call to the decedent's phone. In the hour prior to the shooting, three calls were made from the Defendant's phone to the decedent's phone using a "star 67" prefix to conceal the number's identity. The records further revealed that an unconcealed fourth call was made from the Defendant's phone at 11:34 p.m., and that a return

---

[5] Officer Weitman testified that .38 and .357 caliber bullets are of the same diameter, but the cartridge of a .357 caliber bullet is 1/10[th] of an inch longer than the otherwise identical .38 caliber bullet. While a .38 caliber round can be fired from a .357 magnum pistol, a .357 caliber round cannot be fired from a .38 Special.

call was made two minutes later. N.T. 11/3/2015 at 99–103; 116–119; Commonwealth Exhibits C-49; C-53; C-54A.

On August 13, 2010, Detectives Rossiter and Nordo interviewed the Defendant, who confirmed that the 267-271-6664 number belonged to him. The Defendant claimed that his cousin, Shaku Maven, called the decedent from his phone on the night of the murder. At trial, Maven testified that he did not use the Defendant's phone on the night of the murder, as he was in Darby at that time. N.T. 11/3/2015 at 104–113, 143; Commonwealth Exhibit C-7.

Two days after his interview with detectives, the Defendant told his cousin Norman Whitest that police knew that he was the last one to call the decedent and the last person in the decedent's car. The Defendant told Whitest that he called the decedent for a ride to Evans' home and that he was worried that Maven gave detectives his name. At around the same time period, the Defendant told Evans that he killed the decedent because he needed the money and stole cash from him. N.T. 11/3/2015 at 170–182; N.T. 11/4/2015 at 175–178, 183; N.T. 11/5/2015 at 72–73; Commonwealth Exhibits C-9, C-10.

Tazmin Willis, the Defendant's close friend, was incarcerated at the time of the decedent's murder. Upon his release in the summer of 2010, Willis moved into the Defendant's home at 604 Emily Street. There, the Defendant told Willis that he murdered the decedent because the decedent had disrespected Evans earlier that summer. The Defendant implored Willis not to tell the decedent's son that the Defendant murdered his father. N.T. 11/4/2015 at 8–22; N.T. 11/5/2015 at 66–70; Commonwealth Exhibit C-8.

On January 8, 2013, Willis provided a statement about the instant matter to state and federal authorities in exchange for a downward departure on his pending federal robbery and firearms charges. During the interview, Willis repeated the Defendant's confession and stated

6

that the Defendant habitually carried a silver Smith & Wesson revolver. N.T. 11/4/2015 at 18–26, 49–52; N.T. 11/5/2015 at 28–38, 58–68; Commonwealth Exhibit C-8.

On March 6, 2013, Special Agent Mangold of the Pennsylvania Attorney General's Office interviewed the Defendant, whereupon the Defendant stated that Evans purchased a Smith & Wesson Model 10 revolver, serial number D424759 on his behalf. The Defendant told Special Agent Mangold that someone stole the weapon prior to the interview. N.T. 11/5/2015 at 49–55; Commonwealth Exhibit C-12.

On November 17, 2013, Philadelphia police arrested Carlton Wright and recovered the silver Smith & Wesson Model 10 revolver, serial number D424759, which previously belonged to the Defendant. N.T. 11/4/2015 at 141–143; N.T. 11/5/2015 at 66.

**Discussion**

On appeal, the Defendant challenges the sufficiency and weight of the evidence for each of his convictions.

## Sufficiency of the Evidence

The Defendant argues that the evidence was insufficient to identify the Defendant as the murderer. Evidence is sufficient to sustain a conviction when, viewed in the light most favorable to the Commonwealth as verdict winner, the evidence and all reasonable inferences drawn therefrom support the jury's finding of all the elements of an offense beyond a reasonable doubt. *Commonwealth v. Mattison*, 82 A.3d 386, 392 (Pa. 2013) (*citing Commonwealth v. Montalvo*, 956 A.2d 926, 932 (Pa. 2008)). In applying this standard, Pennsylvania courts acknowledge that "the Commonwealth may sustain its burden by means of wholly circumstantial evidence." *Montalvo*, 956 A.2d at 932 (*citing Commonwealth v. Diggs*, 949 A.2d 873, 877 (Pa. 2008)). The facts and circumstances established by the Commonwealth need not preclude every possibility of

7

innocence, as any doubts regarding a defendant's guilt may be resolved by the fact finder unless the evidence is so inconclusive that, as a matter of law, no probability of guilt may be drawn. *Commonwealth v. Devine*, 26 A.3d 1139, 1145 (Pa. Super. 2011) (*quoting Commonwealth v. Jones*, 874 A.2d 108, 120–121 (Pa. Super. 2005)). The fact finder is free to believe all, part, or none of the evidence. *Id.*

First Degree Murder is any unlawful killing committed with malice and the specific intent to kill. 18 Pa.C.S. § 2502(a); *Commonwealth v. Johnson*, 615 Pa. 354, 42 A.3d 1017, 1025 (2012). Evidence is sufficient to sustain a First-Degree Murder conviction if the Commonwealth established, beyond a reasonable doubt, that (1) a person was unlawfully killed; (2) the defendant killed the person; and (3) the defendant acted with a specific intent to kill. *Commonwealth v. Buford*, 101 A.3d 1182, 1186 (Pa. Super. 2014) (*citing Commonwealth v. Ramos*, 827 A.2d 1195, 1196 (Pa. 2003)). An intentional killing is a "killing by means of poison, or by lying in wait, or any other kind of willful, deliberate, and premeditated killing." 18 Pa.C.S. § 2502(d). Malice and the specific intent to kill may both be inferred from the defendant's use of a weapon on a vital part of the decedent's body. *Buford*, 101 A.2d at 1186; *Commonwealth v. Thomas*, 54 A.3d 332, 335-36 (Pa. 2012). The Commonwealth may establish that the defendant intentionally killed the decedent wholly through circumstantial evidence. *Commonwealth v. Chambers*, 980 A.2d 35, 44 (Pa. 2009) (*citing Commonwealth v. Rivera*, 773 A.2d 131, 135 (Pa. 2001)).

The Defendant confessed his guilt to both Willis and Evans in the weeks after the shooting. N.T. 11/4/2015 at 20–21, 177. Moreover, the Commonwealth presented substantial circumstantial evidence to prove that the Defendant murdered the decedent. The decedent's phone records established that the Defendant called the decedent approximately one-half hour before the murder. N.T. 11/3/2015 at 103–106, 116–118. Aye testified that immediately after

8

the phone call, the decedent travelled to the Defendant's location. N.T. 11/4/2015 at 95–105. The Defendant owned the same type of pistol used to murder the decedent. Finally, the Defendant expressed to Whitest his concern that police knew that he was the last person to call the decedent, demonstrating the Defendant's knowledge of his own guilt. N.T. 11/3/2015 at 170–182

The Defendant further avers that the evidence was insufficient to establish that the Defendant murdered the decedent with premeditation, malice, or the specific intent to kill. Again, the Defendant admitted to Willis and Evans that he killed the decedent because of a perceived slight and because he needed the money, respectively. N.T. 11/4/2015 at 21, 177. Physical evidence indicated that, while inside the Ford Explorer, the Defendant pressed a gun up to the decedent's chest and fired a bullet through several vital organs. 11/5/2015 at 11–19, 21–22. After the Defendant shot the decedent in the mouth, the decedent escaped the vehicle through the passenger door and attempted to crawl away from the scene. N.T. 11/3/2015 at 52–55. As bullet trajectory evidence indicated, the Defendant then stood over the wounded, kneeling decedent and executed him with fatal shots to the head and right shoulder. N.T. 11/5/2015 at 17–19. This evidence clearly establishes premeditation, malice, and the specific intent to kill and is therefore sufficient to sustain a First-Degree Murder conviction.

To sustain a robbery conviction, the Commonwealth must prove that, in the course of committing a theft, the defendant either inflicted serious bodily injury upon another, committed any felony of the first or second degree, or physically removed property of another by force. 18 Pa.C.S. § 3701(a)(1)(i)–(v). A defendant acts "in the course of committing a theft" when the act occurs during (1) an attempt to commit theft; (2) the commission of theft; or (3) flight after the attempt or commission. 18 Pa.C.S. § 3701(a)(2); *Commonwealth v. Alford*, 880 A.2d 666, 677

9

(Pa. Super. 2005). A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof. 18 Pa.C.S. § 3921(a).

The Defendant admitted to Evans that he shot the decedent and stole his money. N.T. 11/4/2015 at 176–177; Commonwealth Exhibit C-10. Although Castro saw the decedent transport heroin in his truck a day before the murder, investigators found neither drugs nor money on the decedent's person or in his truck. N.T. 11/3/2015 at 60–63, 77–90; N.T. 11/4/2015 at 100–105. These facts are sufficient to sustain the Defendant's robbery conviction.

The Defendant avers that the evidence was insufficient to identify the Defendant as the perpetrator of the PIC and VUFA charges. In order to secure a PIC conviction, the Commonwealth must prove that the Defendant possessed an instrument of crime with the intent to employ it criminally. 18 Pa.C.S. § 907(a). An instrument of crime is "[a]nything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have." 18 Pa.C.S. § 907(d)(2); *see also Commonwealth v. Robertson*, 874 A.2d 1200, 1208–1209. (Pa. Super. 2005).

To convict a defendant of Carrying a Firearm Without a License, the Commonwealth must prove beyond a reasonable doubt that (1) the weapon was a firearm; (2) the firearm was unlicensed; and (3) the firearm was concealed on or about the defendant's person or in a vehicle, outside his home or place of business. *Commonwealth v. Coto*, 932 A.2d 933, 939 (Pa. Super. 2007) (*citing Commonwealth v. Parker*, 847 A.2d 745, 750 (Pa. Super. 2004)); 18 Pa.C.S. § 6106(a)(1). Concealment is an issue determined by the trier of fact, based on the particular circumstances in each case. *Commonwealth v. Scott*, 436 A.2d 607, 608 (Pa. 1981) (citation omitted).

10

A person is prohibited from carrying a firearm on a public street in Philadelphia unless that person holds a valid license or is exempt from licensing under 18 Pa.C.S. § 6106(b). 18 Pa. C.S. § 6108.

In February 2008, Evans purchased a Smith & Wesson .38 Special for the Defendant. N.T. 11/5/2015 at 44–50. The certificate of nonlicensure conclusively established that the Defendant was unlicensed on the date of the murder. *Id.* at 108; Commonwealth Exhibit C-47. As previously discussed, the Defendant shot the decedent in the head, chest, and shoulder with a Smith & Wesson .38 Special while in a vehicle and standing on a public street in Philadelphia. This evidence is sufficient to support the Defendant's PIC and VUFA convictions.

### Weight of the Evidence

Weight of the evidence and sufficiency of the evidence are discrete inquiries. An argument that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict but contends, nevertheless, that the verdict is against the weight of the evidence. *Commonwealth v. Davis*, 799 A.2d 860, 865 (Pa. Super. 2002). An allegation that the verdict is against the weight of the evidence is addressed to the sound discretion of the trial court. *Commonwealth v. Dupre*, 866 A.2d 1089, 1101 (Pa. Super. 2005) (citing *Commonwealth v. Sullivan*, 820 A.2d 795, 805–806 (Pa. Super. 2003); *Commonwealth v. Widmer*, 744 A.2d 745, 751–752 (Pa. 2000).

For weight of the evidence claims, the Supreme Court has explained that the test is whether the verdict must be so contrary to the evidence as to shock one's sense of justice. *Commonwealth v. Diggs*, 949 A.2d 873, 879-80 (Pa. 2008). As the finder of fact is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, for a defendant to prevail on a challenge of the weight, the evidence must be "so tenuous, vague and

uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Sullivan*, 820 A.2d 795, 806 (Pa. Super. 2003). A weight of the evidence challenge is one of the least assailable reasons for granting or denying a trial. *Commonwealth v. Horne*, 89 A.3d 277, 285 (Pa. Super. 2014) (*citing Widmer*, 744 A.2d at 753).

The Defendant argues that the verdict is against the weight of the evidence on all charges because of speculative and conjectural evidence used to establish the Defendant as the perpetrator. This argument is virtually identical to the Defendant's sufficiency challenge, and must fail for the same reasons. The Defendant admitted to Evans and Willis that he killed the decedent, and also told Evans that he robbed the decedent. N.T. 11/4/2015 at 21–26, 176–177. The decedent was executed with a Smith & Wesson .38 Special on a public street. *Id.* at 122–128, N.T. 11/5/2015 at 8–9. The Defendant possessed a Smith & Wesson .38 Special at the time of the murder. N.T. 11/4/2015 at 24. The Defendant was the last person to call the decedent the night of the murder, and the decedent was last seen travelling to the Defendant's home. N.T. 11/3/2015 at 100–106; N.T. 11/4/2015 at 80–83. The Defendant was not licensed to carry a firearm. N.T. 11/5/2015 at 108; Commonwealth Exhibit C-47. The Defendant enlisted Evans to buy a weapon for him because he couldn't purchase his own. N.T. 11/4/2015 at 151–173. These facts conclusively prove the elements of each charge. Nothing about the verdict shocks this Court's conscience.

For the foregoing reasons, the decision of this Court should be affirmed.

BY THE COURT,

Barbara McDermott

Barbara A. McDermott, J.

**Commonwealth v. Dennis Fulton, CP-51-CR-0003414-2014**

## PROOF OF SERVICE

I hereby certify that I am this day serving the foregoing filing upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa. R. Crim. P. 114:

Philadelphia District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107
Attn: Hugh Burns, Esquire

**Type of Service:**      **Hand Delivery**

Lee Mandell, Esq.
1500 JFK Blvd., STE 405
Philadelphia, PA 19102

**Type of Service:**      **First Class Mail**

Dennis Fulton
KN0753
SCI Houtzdale
Box 1000
Houtzdale, PA 16698

**Type of Service:**      **Certified Mail**

Dated: January 28, 2016

_____
**Joseph Duffy**
**Law Clerk to the**
**Honorable Barbara A. McDermott**