J-S75027-18
J-S75028-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTIAN GAGNON | : | |
| | : | |
| Appellant | : | No. 1887 EDA 2017 |

Appeal from the PCRA Order May 19, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0008819-2008,
CP-51-CR-0011482-2008, CP-51-CR-0011483-2008,
MC-51-CR-0015719-2009, MC-51-CR-0016540-2008,
MC-51-CR-0033936-2009

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTIAN GAGNON | : | |
| | : | |
| Appellant | : | No. 117 EDA 2018 |

Appeal from the PCRA Order December 21, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  MC-51-CR-0015719-2009,
MC-51-CR-0016539-2008, MC-51-CR-0016540-2008,
MC-51-CR-0033936-2009

BEFORE: PANELLA, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY NICHOLS, J.:           **FILED APRIL 15, 2019**

Appellant Christian Gagnon appeals *pro se* from the orders denying, after an evidentiary hearing, his timely first Post Conviction Relief Act[1] (PCRA) petition.[2] On appeal, he raises six issues, including several claims of ineffective assistance of counsel. We affirm.

We adopt the facts and procedural history set forth on direct appeal in this Court's decision of **Commonwealth v. Gagnon**, 2013 WL 11271206 (Pa. Super. Apr. 2, 2013) (unpublished mem.).[3] **See also Commonwealth v. Gagnon**, 358 EDA 2012, 2013 WL 11299445 (Pa. Super. Jan. 23, 2013) (unpublished mem.) (affirming Appellant's sentence for contempt for violating a protection from abuse (PFA) order). We add that for Appellant's terroristic threats conviction, the victim was Donna Ferraro and not Appellant's spouse, Jeanette Gagnon.[4] N.T. Sentencing Hr'g, 7/31/09, at 19. Ms. Gagnon was the victim in Appellant's convictions for arson, causing catastrophe, possession of an instrument of crime, failure to prevent catastrophe, and

---

[1] 42 Pa.C.S. §§ 9541-9546.

[2] We resolve Appellant's appeals together.

[3] We add that the consolidated docket reflects a preliminary arraignment on April 15, 2008, and the record establishes a preliminary hearing on September 11, 2008. **See** N.T. Prelim. Hr'g, 9/11/08, at 1-64.

[4] We acknowledge, however, that Ms. Gagnon testified at trial that Appellant threatened to kill her unless she gave him their son. **See, e.g.**, N.T. Trial, 4/22/09, at 54.

animal cruelty. *Id.* Appellant filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which denied it on September 25, 2013.

On March 20, 2014, the PCRA court docketed Appellant's first *pro se* PCRA petition. J. Matthew Wolfe, Esq., entered his appearance for Appellant on August 25, 2014,[5] and filed an amended PCRA petition on February 24, 2015, raising three issues. *See* Am. Pet. Under PCRA, 2/24/15, at 2-3 (unpaginated). First, trial counsel was ineffective for not calling Linda Delanty as an alibi witness. Second, Appellant obtained newly discovered evidence, specifically a letter from Ms. Gagnon recanting her trial testimony that implicated Appellant in the arson. Third, trial counsel was ineffective by not objecting to Ms. Gagnon's testimony about confidential communications subject to the marital privilege.

On September 26, 2016, the PCRA court held an evidentiary hearing on only Appellant's claim that Ms. Gagnon recanted her testimony. At the hearing, Appellant claimed that in September 2013, his wife mailed an undated, unsigned letter, which admitted she lied about the arson. PCRA Ct. Op., 5/2/18, at 10. According to the PCRA court, the "letter stated in part that Ms. Gagnon apologizes to Appellant for 'everything,' that she 'messed

---

[5] The record does not establish whether Attorney Wolfe was appointed or privately-retained.

- 3 -

up,' that she knows Appellant 'didn't set that fire,' and that she begs Appellant

not to 'put [her] in jail.'" ***Id.***

> Ms. Gagnon testified at the hearing and unequivocally denied sending Appellant the letter. Ms. Gagnon testified that she harbored none of the sentiments expressed in the letter, and that she never did, and never would, send Appellant any such letter or express such sentiments to him. Moreover, Ms. Gagnon testified that she sought to retract none of her trial testimony.
>
> Although Ms. Gagnon testified that the envelope sent to the prison was hers, she explained the letter was not. Ms. Gagnon explained that she sent Appellant only one letter following the 2008 arson, but that the unsigned, undated, typed letter presented by Appellant was not it.

***Id.*** at 10-11 (citation omitted).[6] The court did not rule on Appellant's petition.

On November 21, 2016, Allan J. Sagot, Esq., entered his appearance for

Appellant.[7] On January 27, 2017, Benjamin Cooper, Esq., who was associated

with Attorney Sagot's firm, filed a second amended PCRA petition reiterating

the four issues raised in Appellant's first amended PCRA petition and

identifying one new issue.[8] Specifically, the new issue was trial counsel was

---

[6] In its Rule 1925(a) opinion, the PCRA court stated that it found Ms. Gagnon's testimony more credible. PCRA Ct. Op. at 11 (stating, "Upon considering their conflicting testimony in the overall context of this case, this Court deemed Ms. Gagnon's testimony that she never sent Appellant the 'recantation' letter, and never contemplated recanting any of her trial testimony, was credible.").

[7] The record does not indicate whether or when Attorney Wolfe was granted permission to withdraw.

[8] Attorney Cooper did not file a formal entry of appearance.

ineffective by not investigating the crime scene and other eyewitnesses, as well as by not presenting character evidence. On April 3, 2017, the PCRA court issued a Pa.R.Crim.P. 907 notice of intent to dismiss, which stated that the issues raised lacked merit.[9] Appellant and Appellant's counsel did not file a response to the Rule 907 notice. The PCRA court dismissed Appellant's petition on May 19, 2017, and *sua sponte* granted Attorney Cooper permission to withdraw.[10]

The PCRA court docketed Appellant's *pro se* notice of appeal on June 8, 2017. The PCRA court appointed John Belli, Esq., as Appellant's appellate counsel. At Attorney Belli's request, this Court remanded to have the PCRA court conduct a ***Grazier***[11] hearing, which occurred on December 21, 2017. Order, 12/21/17.[12] On January 16, 2018, the PCRA court granted Attorney

_____

[9] The Rule 907 notice did not reference the September 26, 2016 evidentiary hearing.

[10] Attorney Cooper did not file a petition to withdraw under ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988), and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988). We add that the court's order did not provide for Attorney Sagot's withdrawal.

[11] ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998).

[12] Appellant represented in his appellate brief that he requested the PCRA court to amend its May 19, 2017 order to include the four municipal court docket numbers associated with his previously raised PCRA claims. Appellant's Brief at 5; Order, 12/21/17. The PCRA court agreed and amended its May 19, 2017 order accordingly. Given the procedural complexity of this matter, we deem it appropriate to construe Appellant's June 8, 2017 notice of appeal as premature, but timely filed. ***See*** Pa.R.A.P. 905(a)(5) ("A notice of

Belli permission to withdraw and permitted Appellant to represent himself *pro se*. Order, 1/16/18. Appellant timely filed a court-ordered Pa.R.A.P. 1925(b) statement.[13]

> Appellant raises three issues:
>
> [1.] Whether trial courts [sic] erred by not meeting the three elements of arson to establish guilt beyond reasonable doubt, and counsel being ineffective for not raising the issues at trial as [Appellant] provided counsel for these issues from **Commonwealth v. Scott**.
>
> [2.] Whether counsel was ineffective for not bringing forth the connection between the assault and arson cases when [A]ppellant was without a doubt the victim of assault, especially when counsel knew [A]ppellant had witnesses he wanted called in his favor, evidence to present and whether [the trial court] erred in justifying Mr. Massott and Mr. Rosario initiating the assault rather than calling 911 and allowing police to do their job.
>
> [3.] Whether PCRA court failed to acknowledge evidence & circumstances and examine the validity of the letter Mrs. Gagnon wrote [A]ppellant and how Mrs. Gagnon's testimony is not credible due to inconsistencies.

Appellant's Brief, No. 1887 EDA 2017, at 2.

---

appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof."). Appellant, however, is not entitled to PCRA relief for any of the crimes associated with the municipal court docket numbers because he is not currently serving sentences of imprisonment, probation, or parole for those crimes. **See** 42 Pa.C. § 9543(a)(1) (stating petitioner, in order to be eligible for PCRA relief, must be currently serving a sentence). According to the municipal court dockets, Appellant has completed serving his sentences.

[13] Due to the complex appellate procedural history, which we do not reproduce here, Appellant filed two appellate briefs, with each brief raising three issues. On April 17, 2018, this Court ordered that Appellant's two appeals be resolved together. Order, 4/17/18.

[4.] Whether trial court erred in making a verbal P.F.A. order, failing to understand the nature of contempt proceedings, violating [A]ppellant in 2011 for cases that lacked jurisdiction, attaching the sentence to the assault case, the prosecution acting out of malice, and counsel being ineffective.

[5.] Whether counsel was ineffective for not objecting to the Commonwealth building a case with conjecture, speculation and hearsay against the [A]ppellant after his arrest and not objecting to the Commonwealth using [A]ppellant[']s wife against the [A]ppellant.

[6.] Whether [A]ppellant was wrongfully and maliciously arrested by Detective Dewey for arson when an Arrest Warrant Affidavit of Probable Cause was not established or signed by a magistrate, violating the [A]ppellant[']s 4th Amendment to [sic] illegal search and seizure, the 5th and 14th Amendment[']s "Due Process", the 8th Amendment to [sic] being subjected to Cruel and Unusual Punishment, and 6th Amendment for Ineffective Assistance of Counsel because counsel overlooked these issues.

Appellant's Brief, No. 117 EDA 2018, at 2.

Initially, Appellant waived issues one and two at docket no. 1887 EDA 2017 and issue four at docket no. 117 EDA 2018 because they were not raised in his amended petitions, and therefore cannot be litigated for the first time on appeal. *See Commonwealth v. Lambert*, 797 A.2d 232, 240-41 (Pa. 2001).

Before addressing Appellant's remaining arguments, we summarize the applicable standard of review.

[O]ur standard of review from the denial of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a de novo standard of review to the PCRA court's legal conclusions.

- 7 -

> Furthermore, to establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

*Commonwealth v. Sandusky*, ___ A.3d ___, ___, 2019 WL 440996, *2 (Pa. Super. 2019) (citations and internal quotation marks omitted).

For his third issue at docket no. 1887 EDA 2017, Appellant contends the PCRA court erred by finding Ms. Gagnon's testimony regarding the recantation letter more credible than his testimony. Appellant's Brief, 1887 EDA 2017, at 24. Appellant discusses facts that, in his view, undermine Ms. Gagnon's credibility. *Id.* at 24-26. The PCRA court's credibility determinations, however, bind this Court. *See Sandusky*, ___ A.3d at ___, 2019 WL 440996 at *2. Here, the PCRA court found credible Ms. Gagnon's testimony that she did not write the unsigned typewritten letter allegedly recanting her trial testimony. *See id.* Accordingly, we cannot conclude Appellant has established error.

Turning to Appellant's fifth issue at docket no. 117 EDA 2018,[14] Appellant argues that trial counsel was ineffective by failing to object when Ms. Gagnon testified against him. Appellant's Brief, No. 117 EDA 2018, at 17. Appellant argues that because Ms. Gagnon did not personally see him set the fire, she is not competent to testify against him. *Id.* at 17-18. He also claims that Ms. Gagnon should not have been permitted to testify about confidential communications between them. *Id.* at 18. Relatedly, he accuses the Commonwealth of misrepresenting Appellant's letters, which it introduced at his trial.[15] *Id.* at 20-21.[16] Trial counsel, Appellant maintains, was therefore ineffective by not objecting. *Id.*

The standard of review for a trial court's decision regarding the admission of evidence is well settled:

> Questions regarding the admission of evidence are left to the sound discretion of the trial court, and we, as an appellate court, will not disturb the trial court's rulings regarding the admissibility of evidence absent an abuse of that discretion. An abuse of discretion is not merely an error of judgment; rather, discretion is abused when the law is overridden or misapplied, or the judgment

---

[14] We held Appellant waived his fourth issue above.

[15] According to the Commonwealth, Appellant wrote these letters to Ms. Gagnon, but mailed the letters from prison to Ms. Gagnon's brother-in-law. Commonwealth's Brief, No. 117 EDA 2018, at 11. The Commonwealth argues that Appellant's letters were not confidential. *Id.*

[16] Appellant also claims counsel was ineffective by not objecting to a witness testifying about confidential letters written by Appellant. Appellant's Brief, No. 117 EDA 2018, at 18. Appellant waived that issue by not raising it in his PCRA petition.

exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record.

***Commonwealth v. Trinidad***, 96 A.3d 1031, 1036 (Pa. Super. 2014)

(internal quotation marks and citations omitted).

Section 5913 sets forth the provision with respect to a spouse acting as a witness against the other spouse:

> Except as otherwise provided in this subchapter, in a criminal proceeding a person shall have the privilege, which he or she may waive, not to testify against his or her then lawful spouse except that there shall be no such privilege:
>
> (1) in proceedings for desertion and maintenance;
>
> (2) in any criminal proceeding against either for bodily injury or violence attempted, done or threatened upon the other, or upon the minor children of said husband and wife, or the minor children of either of them, or any minor child in their care or custody, or in the care or custody of either of them;
>
> (3) applicable to proof of the fact of marriage, in support of a criminal charge of bigamy alleged to have been committed by or with the other; or
>
> (4) in any criminal proceeding in which one of the charges pending against the defendant includes murder, involuntary deviate sexual intercourse or rape.

42 Pa.C.S. § 5913.

As the Pennsylvania Supreme Court explained in ***Commonwealth v. Mattison***, 82 A.3d 386 (Pa. 2013), Section 5913 "affords the testifying spouse a waivable privilege to refuse to give adverse testimony against his or her spouse in a criminal trial, except [in] cases where one spouse is charged with threatening, attempting or committing an act of bodily injury or violence on

the spouse." *Id.* at 394 n.4 (citation omitted). More precisely, the testifying spouse has "no privilege to refuse to testify against [the other] spouse" in cases involving threats of violence. *Commonwealth v. Newman*, 633 A.2d 1069, 1072 (Pa. 1993); *see* 42 Pa.C.S. § 5913.

Section 5914, which addresses confidential communications between spouses, states, "[e]xcept as otherwise provided in this subchapter, in a criminal proceeding neither husband nor wife shall be competent or permitted to testify to confidential communications made by one to the other, unless this privilege is waived upon the trial." *Id.* § 5914. In other words, "[e]ven if a husband or wife may be called to give testimony adverse to his or her spouse, however, he or she is not competent [under Section 5914] to testify to confidential communications." *Mattison*, 82 A.3d at 394 n.4 (brackets in original and citation omitted).

In *Commonwealth v. McBurrows*, 779 A.2d 509 (Pa. Super. 2001), this Court explained Section 5914 as follows:

> This privilege prevents a husband or wife from testifying against their spouse as to any communications which were made during the marital relationship. The privilege remains in effect through death or divorce. The confidential communication cannot be divulged without the consent of the other spouse. The public policy sought to be enhanced by this privilege is the preservation of marital harmony and the resultant benefits to society from that harmony. Communications between spouses are presumed to be confidential, and the party opposing application of the rule disqualifying such testimony bears the burden of overcoming this presumption. In order for a confidential communication between spouses to be protected, knowledge must be gained through the marital relationship and in the confidence which that relationship inspires. In order to be protected under § 5914, it is essential

- 11 -

that the communication be made in confidence and with the intention it not be divulged. Therefore, whether a particular communication is privileged depends upon its nature and character of the circumstances under which it was said.

*McBurrows*, 779 A.2d at 514 (internal quotation marks and citations omitted). For example, communications from one spouse to another regarding past, ongoing, and future or intended crimes against that spouse are not privileged communications. *Commonwealth v. Spetzer*, 813 A.2d 707, 720-21 (Pa. 2002). Any communications tending to create or promote marital disharmony are not privileged communications. *Id.* & 721 n.6.

Initially, the waivable privilege exists for Ms. Gagnon because Appellant's case did not involve any of the four excludable categories of offenses in Section 5913. *See* 42 Pa.C.S. § 5913(1)-(4); *Mattison*, 82 A.3d at 394 n.4. Although, for the dockets at issue, Appellant was charged with multiple offenses involving bodily injury or threats of violence, none directly involved Ms. Gagnon as the victim. *See* N.T. Sentencing Hr'g at 19; 42 Pa.C.S. § 5913(2). Indeed, as noted above, the victim for Appellant's terroristic threats conviction was not Ms. Gagnon. *See* N.T. Sentencing Hr'g at 19. Therefore, Ms. Gagnon could waive the privilege when she testified against Appellant, and Appellant's assertion to the contrary lacks merit. *See* 42 Pa.C.S. § 5913.

With respect to Appellant's argument about the Section 5914 privilege, Appellant has not explained how or why the communications at issue are privileged. *See Spetzer*, 813 A.2d at 720-21. He does not address whether

the communications at issue created or furthered marital harmony. *See id.* He also does not argue why the communications did not concern his past crimes, *e.g.*, arson. *See id.* at 721 & n.6. Finally, as the Commonwealth observed, Appellant has not demonstrated that the letters mailed to Ms. Gagnon's brother-in-law should be considered confidential. *See McBurrows*, 779 A.2d at 514. For these reasons, Appellant has not established arguable merit to his ineffective assistance of counsel claim.

Appellant's sixth issue is that the police illegally arrested him because the arrest warrant was not signed by the magisterial district judge until after his arrest. Appellant's Brief, 117 EDA 2018, at 22. He claims that he was arrested on April 14, 2008, around 1:00 p.m.—although he acknowledges that the police report states he was arrested at 1:58 p.m. *Id.* at 23. Appellant asserts, however, that the affidavit of probable cause was created four hours later, at 5:13 p.m. *Id.* Counsel, Appellant argues, was generally ineffective for failing to challenge the legality of his arrest for the arson and related charges at docket no. 11482-2008. *Id.* at 27.

Pennsylvania Rule of Criminal Procedure 109 addresses defects in the warrant:

> A defendant shall not be discharged nor shall a case be dismissed because of a defect in the form or content of a complaint, citation, summons, or warrant, or a defect in the procedures of these rules, unless the defendant raises the defect before the conclusion of the trial in a summary case or before the conclusion of the preliminary hearing in a court case, and the defect is prejudicial to the rights of the defendant.

Pa.R.Crim.P. 109.

In **Commonwealth v. Abdul-Salaam**, 678 A.2d 342 (Pa. 1996), the Pennsylvania Supreme Court addressed a similar situation on direct appeal in which the defendant contended that "the affidavit for the issuance of the arrest warrant, which was filed after [the defendant's] arrest, failed to set forth probable cause." **Abdul-Salaam**, 678 A.2d at 347 (footnote omitted). According to the **Abdul-Salaam** Court, the trial court "found that the probable cause issue was moot in light of the preliminary hearing in which [the magisterial district judge] found that a prima facie case existed." **Id.** at 348.

> The trial court reasoned that at the preliminary hearing, the Commonwealth was required to establish probable cause to warrant a belief that [the defendant] committed the charged offenses. Thus, because probable cause was established at the preliminary hearing, the issue became moot.

**Id.** The Supreme Court agreed, holding, "we agree with the trial court's determination that upon the district justice's finding at the preliminary hearing that a prima facie case had been established, any issue concerning a defect in the affidavit became moot . . ." **Id.** at 349.

> Moreover, as the Commonwealth points out, Pa.R.Crim.P. No. [109[17]] provides that a defendant shall not be discharged nor shall charges be dismissed because of any defect in the form or content of a complaint, summons, or warrant, unless the defendant raises the defect before the termination of the preliminary hearing and the defect is prejudicial to the rights of the defendant. Additionally, the comment to Pa.R.Crim.P. No. [109] notes that

---

[17] The relevant rule was renumbered to 109 in 2001, five years after the **Abdul-Salaam** decision.

- 14 -

> the Commonwealth may amend a complaint, summons, or warrant or file a new complaint against the defendant upon the finding of a defect. Thus, even if [the defendant's] motion concerning the defective affidavit had prevailed at the opening of the preliminary hearing and the complaint was dismissed, the Commonwealth could have, and almost certainly would have, immediately amended or filed a new complaint. Therefore, we find that [the defendant] was not prejudiced by the trial court's refusal to dismiss the complaint against [the defendant], and thus, was not entitled to relief.

*Id.*

Here, even assuming there was a material defect in Appellant's affidavit of probable cause for an arrest, Appellant—like the defendant in ***Abdul-Salaam***—had a preliminary hearing, at which a judge held there was probable cause. ***Cf. id.*** at 348. Appellant, therefore, cannot establish prejudice because, like the ***Abdul-Salaam*** Court, any defect became moot after a judge held the Commonwealth established a *prima facie* case. ***Cf. id.*** at 349. It follows that Appellant cannot establish counsel's ineffectiveness assistance. ***See Sandusky***, ____ A.3d at ____, 2019 WL 440996 at *2. For these reasons, we affirm the order below.

Order affirmed. Appellant's applications to object to the Commonwealth's request for extension of time to file brief are denied.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/15/19