J-S04022-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| RONALD MURPHY | : | |
| | : | |
| Appellant | : | No. 537 EDA 2022 |

Appeal from the Judgment of Sentence Entered February 4, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003808-2019

BEFORE: MURRAY, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KING, J.:                      **FILED JUNE 23, 2023**

Appellant, Ronald Murphy, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his bench trial convictions for third-degree murder, attempted murder, aggravated assault, persons not to possess firearms, firearms not to be carried without a license, carrying firearms on public streets in Philadelphia, possession of an instrument of crime ("PIC"), and recklessly endangering another person ("REAP").[1] We affirm.

The relevant facts and procedural history of this appeal are as follows:

> [O]n September 4, 2016, Ryan Shields and his girlfriend, Amber Michael went to the Yolo Bar at 17th and

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(c); 901(a), 2702(a); 6105(a); 6106(a); 6108; 907(a); and 2705, respectively.

Susquehanna Streets in North Philadelphia to celebrate their one-year anniversary. Later that night, early into the morning hours of September 5th, [Ms. Michael] got hungry and went diagonally across the street to the China Bowl to order some food. [Mr. Shields] stood by his car outside the bar. [Appellant] entered the restaurant and began to strike up a conversation with [Ms. Michael], quickly turning into inappropriate comments. [Ms. Michael] signaled [Mr. Shields] to come over which he did, calmly separating [Appellant] from [Ms. Michael] and escorting her out of the eatery. The couple crossed the street and were followed by [Appellant] who continued his unwanted remarks. This in turn caused an exchange between different groups in the middle of Susquehanna Avenue. [Appellant] then walked away towards 17th Street. [Ms. Michael] and [Mr. Shields] walked back to the bar. All of this was caught on surveillance video.

About twenty minutes later, [Ms. Michael], still upset about the confrontation, left the bar to take a walk up North Chadwick Street, with [Mr. Shields] close behind. Halfway up the block, [Mr. Shields] noticed [Appellant] on the steps of an abandoned building. When the two approached, [Appellant] got up, pulling out a pistol from his waist. [Mr. Shields] told [Appellant] "It's not that deep" but [Appellant] replied that it was and began firing. [Appellant] shot [Mr. Shields] in the torso and he fell to the ground. As he was struggling on the ground, defenseless and paralyzed, [Appellant] continued shooting him, striking him with ten bullets throughout his body, including in his head and at the base of his skull, his groin, right shoulder, right hip, left forearm, left hand, and right forearm. [Appellant] also shot at [Ms. Michael] down the street, striking her in the back, with the bullet travelling through both lungs and the aorta. [Ms. Michael] did not survive. Mr. Shields positively identified [Appellant] as the shooter.

(Trial Court Opinion, filed 6/16/22, at 3-4) (internal record citations omitted).

Following a bench trial, the trial court convicted Appellant of the above-mentioned offenses on November 30, 2021. On February 4, 2022, the court sentenced Appellant to an aggregate term of thirty-five to seventy years'

- 2 -

incarceration plus five years' probation. On February 11, 2022, Appellant filed a timely post-sentence motion, which the court denied on February 14, 2022. On February 21, 2022, Appellant filed a timely notice of appeal. On February 22, 2022, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and Appellant complied.

Appellant raises the following issues for our review:

> The evidence was insufficient to convict [Appellant] of murdering [Ms.] Michael.

> All of the convictions were against the weight of the evidence.

(Appellant's Brief at 8-9).

In his issues combined, Appellant argues the Commonwealth failed to present sufficient evidence to sustain his conviction for third-degree murder. Appellant alleges the Commonwealth did not present any evidence to establish that Appellant was the individual who shot and killed Ms. Michael. Appellant asserts that Mr. Shields testified that after he was shot, he did not see where Appellant or Ms. Michael went and did not see Appellant shoot Ms. Michael. Appellant further contends that the surveillance video shows there were other individuals that Mr. Shields interacted with on the night of the shooting who could have been the shooter. Specifically, Appellant submits that there was another individual present whose clothing matched the description that Mr. Shields provided to the police when he described the shooter. Appellant emphasizes that the Commonwealth presented no direct evidence identifying

Appellant as the individual who shot Ms. Michael and no evidence to exclude other potential suspects.

Additionally, Appellant asserts that his convictions were against the weight of the evidence because the Commonwealth did not provide any reliable evidence identifying Appellant as the perpetrator of the crimes. Appellant alleges that Mr. Shields' testimony is entirely unreliable because he was unable to recall many details about the night in question and testified inconsistently with his prior statements. Specifically, Appellant contends that Mr. Shields described the individual who shot him as wearing a gray hoodie in his initial statement to the police. Appellant argues that another individual matching this description was present at the scene, raising significant doubts about the reliability of Mr. Shields' subsequent identification testimony. Appellant insists that Mr. Shields' testimony was the only evidence the Commonwealth presented to identify Appellant as the shooter, rendering his convictions against the great weight of the evidence. Appellant concludes he is entitled to relief on his challenges to the sufficiency and weight of the evidence, and this Court should vacate his judgment of sentence or remand for a new trial. We disagree.

When examining a challenge to the sufficiency of the evidence, our standard of review is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every

element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super. 2011), *appeal denied*, 613 Pa. 642, 32 A.3d 1275 (2011) (quoting *Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super. 2005)). Additionally:

The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the…verdict if it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Small*, 559 Pa. 423, [435,] 741 A.2d 666, 672-73 (1999). Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert. denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004)

(most internal citations omitted).

In determining whether a particular identification was reliable, this Court has explained that we:

> should consider the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of [his] prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. The opportunity of the witness to view the actor at the time of the crime is the key factor in the totality of the circumstances analysis.

*Commonwealth v. Valentine*, 101 A.3d 801, 806 (Pa.Super. 2014).

The Crimes Code defines murder and criminal attempt as follows:

**§ 2502. Murder**

**(a) Murder of the first degree.**—A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

**(b) Murder of the second degree.**—A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony.

**(c) Murder of the third degree.**—All other kinds of murder shall be murder of the third degree. Murder of the third degree is a felony of the first degree.

18 Pa.C.S.A. § 2502(a)-(c).

**§ 901. Criminal attempt**

**(a) Definition of attempt.—**A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime.

18 Pa.C.S.A. § 901(a). "Murder in the third degree is an unlawful killing with

- 6 -

malice but without the specific intent to kill." ***Commonwealth v. Dunphy***, 20 A.3d 1215, 1219 (Pa.Super. 2011).  Malice is defined as:

> [A] wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured…. [M]alice may be found where the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause serious bodily injury.

***Commonwealth v. DiStefano***, 782 A.2d 574, 582 (Pa.Super. 2001), *appeal denied*, 569 Pa. 716, 806 A.2d 858 (2002).  "Malice may be inferred by considering the totality of the circumstances." ***Dunphy, supra***.

"A person may be convicted of attempted murder if he takes a substantial step toward the commission of a killing with the specific intent in mind to commit such an act." ***Commonwealth v. Dale***, 836 A.2d 150, 153 (Pa.Super. 2003) (quoting ***Commonwealth v. Hobson***, 604 A.2d 717, 719 (Pa.Super. 1992)).  "Specific intent to kill can be established though circumstantial evidence, such as the use of a deadly weapon on a vital part of the victim's body." ***Commonwealth v. Montalvo***, 598 Pa. 263, 274, 956 A.2d 926, 932 (2008), *cert denied*, 556 U.S. 1186, 129 S.Ct. 1989, 173 L.Ed.2d 1091 (2009).  A gun is a deadly weapon. ***See Commonwealth v. Bond***, 539 Pa. 299, 305, 652 A.2d 308, 311 (2003).  Further, the neck and head are vital parts of the body. ***Montalvo, supra***. ***See also Commonwealth v. Mattison***, 623 Pa. 174, 185, 82 A.3d 386, 392 (2013).

Additionally, the Crimes Code defines aggravated assault and REAP in

relevant part as follows:

> ### § 2702. Aggravated Assault
>
> **(a) Offense defined.—**A person is guilty of aggravated assault if he:
>
> > (1) Attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life.

18 Pa.C.S.A § 2702(a)(1).

> ### § 2705. Recklessly endangering another person
>
> A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury.

18 Pa.C.S.A. § 2705.

As it pertains to these sections, "bodily injury" is defined as "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S.A. § 2301. "Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." ***Id.***

Further, the Crimes Code defines PIC as follows:

> ### § 907. Possessing instruments of crime
>
> **(a) Criminal instruments generally.—**A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally.

18 Pa.C.S.A. § 907(a).

Additionally, the Uniform Firearms Act provides, in relevant part, as

follows:

### § 6105.  Persons not to possess, use, manufacture, control, sell or transfer firearms

**(a)   Offense defined.—**

(1)   A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

### § 6106.  Firearms not to be carried without a license

**(a)   Offense defined.—**

(1)   Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

### § 6108.  Carrying firearms on public streets or public property in Philadelphia

No person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class unless:

(1)   such person is licensed to carry a firearm; or

(2)   such person is exempt from licensing under section 6106(b) of this title (relating to firearms not to be carried without a license).

18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), and 6108.  A witness's testimony alone can establish a defendant's possession of a firearm.  ***See***

*Commonwealth v. Antidormi*, 84 A.3d 736, 757 (Pa.Super. 2014), *appeal denied*, 626 Pa. 681, 95 A.3d 275 (2014).

Instantly, Mr. Shields testified that while Ms. Michael was waiting for food in the China Bowl, Appellant made disrespectful statements to her, causing her to call Mr. Shields over to her. As a result, Mr. Shields walked into the restaurant and stood with Ms. Michael to wait for her food. When they left the restaurant, Appellant followed them out of the China Bowl and continued to make disrespectful remarks to Ms. Michael, resulting in a brief verbal altercation between Appellant and Mr. Shields. The surveillance video footage confirmed Mr. Shields' account. Mr. Shields further testified that although they interacted with other people in the restaurant, on the street and in the bar, neither he nor Ms. Michaels had any negative interactions with anyone else that night. Ms. Michael's father also stated that he had a very close relationship with his daughter, and he was not aware of anyone in his daughter's life at the time of the shooting that would want to harm her.

Additionally, Mr. Shields testified that he and Ms. Michael left the bar shortly after their interaction with Appellant at China Bowl. Ms. Michael wanted to take a walk to distance herself from the commotion and Mr. Shields followed close behind her. As they were walking, Mr. Shields noticed Appellant sitting on the steps of an abandoned house. Appellant approached Mr. Shields, pulled out his gun, and began shooting. Mr. Shields fell to the ground after being struck and heard more gunshots in rapid succession. Ms. Michael,

who was discovered lying in the same area as Mr. Shields, died as a result of a gunshot wound. Police noted that bullets also struck a white van that was parked between where Ms. Michael and Mr. Shields were found. An expert witness in firearms identification and ballistics examination testified that all the recovered cartridge casings from the scene were from the same gun. Taken in its totality and viewed in the light most favorable to the Commonwealth as the verdict winner, we agree with the trial court that the Commonwealth presented sufficient circumstantial evidence to sustain Appellant's third-degree murder conviction. *See* 18 Pa.C.S.A. § 2502(c); ***Hansley, supra***.

Additionally, the trial court found that Appellant's convictions were not against the weight of the evidence presented. Mr. Shields stated that he had a clear opportunity to observe Appellant's face in the brightly lit China Bowl and on the street when they interacted on the night of the shooting. Although Mr. Shields misremembered the details of the clothing that Appellant was wearing when Mr. Shields gave his initial statement to police, Mr. Shields definitively identified Appellant as the shooter on multiple occasions thereafter. Specifically, Mr. Shields identified Appellant in a photo array during a police interview, stated that he recognized Appellant by his voice at the preliminary hearing, and positively identified Appellant at trial. Further, Mr. Shields clarified at trial that the individual in the gray hoodie at the scene had nothing to do with the altercation in China Bowl or the shooting. Mr.

Shields gave detailed testimony about the events of the night of the shooting, much of which was corroborated by video surveillance footage. Accordingly, even though Mr. Shields briefly mistook an article of clothing that Appellant was wearing, this error does not render Mr. Shields' identification testimony so entirely unreliable such that it cannot form the basis for Appellant's convictions. *See Valentine, supra*.

Mr. Shields' testimony established that Appellant drew a gun and fired numerous shots at Mr. Shields while he was walking on the street with Ms. Michael. Mr. Shields sustained ten bullet wounds throughout his body, including his head, the base of his skull, his groin, right shoulder, right hip, left forearm, left hand, and right forearm. Ms. Michael died as a result of a gunshot wound. Additionally, the parties stipulated that Appellant did not have a valid license to carry a firearm. On this record, we see no reason to disrupt the trial court's conclusion that Appellant was not entitled to relief on his challenge to the weight of the evidence. *See Champney, supra*. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/23/2023

- 12 -